O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGGIE WALLACE; TRAVIN LU'I; ERIK FRATES; on behalf of themselves and similarly situated employees,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE FINANCIAL CORPORATION; FULL SPECTRUM LENDING, INC.; DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. SACV 08-1463 AG (MLGx)<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES |

This case challenges an employer's program of distributing back pay to employees allegedly mis-classified as exempt from overtime pay requirements. Plaintiffs Reggie Wallace ("Wallace"), Travin Lu'I ("Lu'I"), and Erik Frates ("Frates") (collectively, "Plaintiffs") have filed a Motion for Partial Summary Judgment, or in the alternative, Summary Adjudication of Issues ("Motion"). After considering all papers and arguments submitted, the Motion is DENIED.

**BACKGROUND**

Defendants Countrywide Home Loans, Inc. ("Countrywide") and Full Spectrum Lending, Inc. ("Full Spectrum") provide equity home loans and other secured and collateralized financing to consumers nationwide. Plaintiffs Wallace, Lu'I, and Frates were all employed by Full Spectrum, a former subsidiary and now division of Countrywide, as Branch Account Executives for various periods between 2002 and 2005. From 2002 through 2004, Full Spectrum classified its Branch Account Executives as "exempt" from overtime pay requirements under the Fair Labor Standards Act ("FLSA") and California law. (Declaration of Nancy Jagielski in Support of Defendants' Opp'n ("Jagielski Decl.") ¶ 2.) Early in 2005, Countrywide resolved two wage and hour class actions involving employees who worked in other positions. (Jagielski Decl. ¶ 2.) After those settlements, Full Spectrum opted to reclassify all of its Branch Account Executives as "non-exempt" from overtime pay requirements and to pay both current and former Branch Account Executives back overtime. (Jagielski Decl. ¶¶ 3-4.)

For California-based employees, the voluntary back pay program covered Branch Account Executives who were employed by Full Spectrum between January 1, 2002, and December 31, 2004, the date of reclassification. (Jagielski Decl. ¶ 4.) Each qualifying employee was sent an "acknowledgement letter" explaining the details of the back pay program. In each letter, Full Spectrum stated its belief that Branch Account Executives worked an average of 5 hours of overtime per week. (Jagielski Decl. ¶¶ 6-8; Exh. G, Acknowledgement Letter.) For each employee, Full Spectrum then calculated five hours of overtime pay per week of employment during the covered period and offered to pay the employee that amount. (Jagielski Decl. ¶¶ 6-7.) The time period calculation did not take account of days off or vacations, but instead assumed the employee worked five hours of overtime each and every week during the relevant time period. (Jagielski Decl. ¶ 4-6.) Employees were directed to sign and return the attached acknowledgement form if they believed the information to be correct. (Jagielski Decl. ¶ 7.) Employees who had "any questions" or "need[ed] additional information" were directed to contact the Human Resources Department. (Jagielski Decl. ¶10.) Above the signature line, the

acknowledgement form stated:

> I agree that the information above reflects a reasonable estimate of
> the overtime hours I worked for the period indicated.  I also agree
> that the amount of compensation indicated above and the method of
> calculating the overtime premium is reasonable.  I was given the
> opportunity to ask questions and offer my own records or
> information with respect to the hours worked.  I am satisfied that the
> hours and the total amount noted above equals or exceeds the full
> amount due to me for overtime hours worked during the period
> indicated.

(Jagielski Decl., Exh. G.)  Employees were required to sign and return the acknowledgement letters before receiving the overtime pay offered.  (Jagielski Decl. ¶ 10.)

A total of 4,313 acknowledgement letters were sent to current and former Branch Account Executives during the week of May 4, 2005.  (Jagielski Decl. ¶ 9.)  About 3,676 of those employees signed and returned the acknowledgement letters and were paid accordingly.  (Jagielski Decl. ¶ 10.)  About 150 other employees contended that they worked an average of more than five hours of overtime per week and appealed to Human Resources for more back pay.  (Jagielski Decl. ¶ 10.)  Of those approximately 150 employees, 78 ultimately received more overtime pay, totaling about $323,000 in claims.  (Jagielski Decl. ¶ 10.)  About 500 employees failed to respond to the acknowledgement letters at all, including approximately 200 employees whose letters were returned as undeliverable.  (Jagielski Decl. ¶ 10.)  In total, Full Spectrum paid out more than $10 million in back overtime pay to over 3,700 current and former Branch Account Executives.  (Jagielski Decl. ¶ 10-11; Exh. H, Database of Back Pay Program.)

Plaintiff Wallace received his acknowledgement letter, but never signed it and did not receive any back pay.  (Jagielski Decl. ¶ 11.)  Plaintiff Frates kept detailed records of the hours he worked at Full Spectrum, and upon receiving his acknowledgement letter, Frates contacted

his manager and Human Resources and stated that he had worked more than five hours per week of overtime. (Frates Depo. 9:19-12:4, 106:2-109:13.) While Frates understood that Full Spectrum had no time records and had simply estimated his overtime hours, Frates did not believe the amount of back pay he was offered was fair or accurate. (Frates Depo. 113:10-114:05.) Ultimately, however, Frates signed his acknowledgement letter and accepted the back pay offered. (Frates Depo. 106:2-18, 123:9-23.) Plaintiff Lu'I also documented the hours he worked at Full Spectrum, and after receiving his acknowledgement letter, Lu'I contacted Human Resources and stated that he had worked more than five hours per week of overtime. (Lu'I Depo. 76:12-79:24.) Lu'I was asked to provide documentation of the hours he claimed to have worked, and he did so. (Lu'I Depo. 83:9-16.) Lu'I was then informed that, after consultation with his managers, Full Spectrum had determined that the five-hour overtime estimate was sufficient and that the back pay offer would not be increased. (Lu'I Depo. 83:17-84:4.) Although he continued to disagree with Full Spectrum's estimate, Lu'I signed the acknowledgement letter and accepted the back pay offered. (Lu'I Depo. 84:9-86:16, 89:6-21.)

Based on these facts and others, Plaintiffs have brought four claims against Defendants, numbered as follows: (1) violation of California Business & Professions Code § 17200 ("UCL"); (2) fraud and deceit; (3) violation of California Labor Code §§ 201, 202, 203, 510, and 1194; and (4) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 216(b). Plaintiffs now move for partial summary judgment, or in the alternative summary adjudication.

**PRELIMINARY MATTERS**

**1.      JUDICIAL NOTICE**

To support their motion, Plaintiffs request that the Court take judicial notice of seven documents. Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to

4

1  sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  Facts subject to
2  judicial notice may be considered on a motion to dismiss. *Mullis v. United States Bankruptcy*
3  *Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

4  Plaintiffs first request that the Court take judicial notice of six documents that are part of
5  the record in this case. (Plaintiffs' RJN Exhs. A-F.) Court records, acts, and proceedings in the
6  same or similar federal or state cases are appropriate for judicial notice, so the Court GRANTS
7  Plaintiffs' request as to Exhibits A through F. Plaintiffs' seventh request for judicial notice is
8  the "ABA Labor and Employment Section, EEO Committee Midwinter Meeting, Naples Florida,
9  April 8, 2005." (Plaintiffs' RJN Exh. G.) The Court finds that this document is capable of
10 accurate and ready determination, and Defendants have not challenged the accuracy of this
11 document, so the Court GRANTS Plaintiffs' request for judicial notice as to that document as
12 well.

13 Defendants ask the Court to take judicial notice of a U.S. Department of Labor
14 ("D.O.L.") Opinion Letter FLSA2006-31. Because D.O.L. opinion letters are publicly available,
15 the Court finds that the existence of the Letter is a proper subject of judicial notice under Federal
16 Rule of Evidence 201 and GRANTS Defendants' request. The Court does not, however, adopt
17 the factual findings of the Letter by taking judicial notice of its existence. *See Cal. ex rel*
18 *Lockyer v. Mirant Corp.*, 266 F. Supp. 2d 1046, 1054 (N.D. Cal. 2003).

19
20
21 **2.      EVIDENTIARY OBJECTIONS**
22
23 Both parties submitted numerous evidentiary objections. The Court did not rely on any of
24 the evidence to which Defendants objected, so Defendants' objections are OVERRULED as
25 moot.
26 Plaintiffs object to the Declaration of Nancy Jagielski ("Jagielski Decl.") and the
27 Declaration of Patricia Johnson ("Johnson Declaration") on the grounds previously set forth in
28 Plaintiffs' objections to the Declarations in support of Defendants' previous Motion for Partial

5

Summary Judgment, decided in May 2009. The Court did not rely on most of the objected to-evidence, and to the extent that the Court did not rely on the evidence submitted, the Objections are OVERRULED as moot. The Court did rely on many of the statements in the Jagielski Declaration. Most of Plaintiffs' objections were for lack of foundation and lack of personal knowledge. To the extent that the Court relied on the Jagielski Declaration, the objections are OVERRULED because the Court finds an appropriate foundation has been laid, that Ms. Jagielski had personal knowledge of the relevant facts, and that the other objections raised by Plaintiff did not apply.

**LEGAL STANDARD**

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *Id.* at 322-23. If the non-moving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

The standard that applies to a motion for summary adjudication is the same standard that applies to a motion for summary judgment. *See* Fed. R. Civ. P. 56(a), 56(c), 56(d).

# ANALYSIS

## 1. PLAINTIFFS' UCL CLAIM

Plaintiffs seek Partial Summary Judgment against Defendants for violation of the unlawful prong of the UCL. The UCL makes unlawful business practices actionable. Cal. Bus. & Prof. Code § 17200, *et seq*. "The UCL defines unfair competition as any unlawful, unfair or fraudulent business practice. . . . In effect, the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL." *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999). In Plaintiffs' Second Amended Complaint ("SAC"), they allege three separate unlawful, unfair, or fraudulent business practices: (1) requiring, in the acknowledgement letters, that employees sign a release to be paid back overtime, in direct violation of Section 206.5 of the California Labor Code; (2) using the acknowledgement letters to mislead, deceive, and confuse employees into believing that Defendants' calculation of estimated overtime hours was based on reasonable estimates, when, in fact, it was based upon "an arbitrarily and intentionally lowered estimate of overtime hours worked;" and (3) failing to pay full and complete overtime compensation to employees under the FLSA and California Labor Code. (SAC ¶¶ 33, 39, 40.) Plaintiffs' Motion for Partial Summary Judgment is based on the first and third alleged practices.

### 1.1 Whether the Acknowledgements were unlawful releases under California Labor Code Section 206.5

Plaintiffs first ask the Court to find that the acknowledgement letter is an unlawful conditional payment and release of back overtime wages in violation of California Labor Code § 206.5 ("Section 206.5"). Section 206.5 "precludes an employer from requiring an employee to sign a release as a condition to receiving payment of wages owed." *Woods v. Fox Broadcasting Sub., Inc.*, 129 Cal. App. 4th 344, 357 (2005). A release is defined as "the relinquishment,

7

1  concession, or giving up of a right, claim, or privilege, by the person in whom it exists or to
2  whom it accrues, to the person against whom it might have been demanded or enforced."
3  *Commercial Insurance Co. v. Copeland*, 248 Cal. App. 2d 561, 565 (1967) (citing Black's Law
4  Dictionary (4th ed.)).  To qualify as an effective release, the document must "be clear and
5  explicit, free of ambiguity or obscurity, and tell the prospective releasor he or she is releasing the
6  other from liability." *Conservatorship of Link*, 158 Cal. App. 3d 138, 143 (1984).

7        Defendants argue that the language used in the Acknowledgement was not release
8  language.  But this Court already rejected that argument in the May 11, 2009 Order Denying
9  Defendants' Motion for Partial Summary Judgment ("May 11, 2009 Order"), where this Court
10 found that "Defendants cannot establish that the acknowledgement letters did not constitute
11 'releases' under Section 206.5."  (May 11, 2009 Order, Docket Entry ("D.E.") 41, 11:26-27.)
12 The Court based that finding on the fact that "employees who wished to receive the back pay
13 offered them were forced to sign statements agreeing that the amount offered them 'equal[ed] or
14 exceed[ed]' the amount they were actually due."  (May 11, 2009 Order 11:21-23.)  "In effect,
15 those employees were required to concede that they were not entitled to any more overtime pay
16 than they were being offered and could not pursue any claim for more overtime pay."  (May 11,
17 2009 Order 11:24-26.)  Defendants have offered no new facts, so the Court finds no reason to
18 stray from its finding in the May 11, 2009 Order.  The Court still finds that the language used in
19 the acknowledgement is consistent with language of a release.

20       Defendants also argue that even if the language is release language, there is an issue of
21 fact as to whether the Acknowledgement violates Section 206.5.  Section 206.5 only prohibits a
22 release of "wages due."  In *Reid v. Overland Machined Products*, 55 Cal. 2d 203, 207 (1961),
23 the California Supreme Court distinguished between wages that were "concededly due" and
24 wages subject to a "bona fide dispute."   The *Reid* court noted that wages subject to a bona fide
25 dispute could be subject to a compromise and release without violating Section 206.5.  55 Cal.
26 2d at 207 *see also Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576, 1587 (2009) (holding
27 that release of wage claims contained in severance agreement was valid); *Chindarah v. Pick Up*
28 *Stix*, 171 Cal. App. 4th 796 (2009) (release of overtime claims obtained on disputed wage claim

8

enforceable). Defendant has offered deposition testimony of the Managing Director of Countrywide stating that Defendants believed that the classification of the Account Executives as exempt was correct, but that they voluntarily reclassified the individuals to avoid future class actions. (Jagielski Depo. 44:1-5.) The Court finds that a genuine issue of fact remains as to whether the overtime wages were "concededly due" or were subject to a "bona fide dispute" when the applicable Plaintiffs signed the Acknowledgements. Accordingly, the Motion is DENIED as to the issue of whether the Acknowledgements constituted improper releases under Section 206.5.

**1.2 Whether the Defendants failed to pay full and complete overtime compensation to Account Executives under the FLSA and California Labor Code**

Next, Plaintiffs argue at length that there is no material issue of fact as to whether the Defendants failed to pay full and complete overtime compensation to Account Executives under the FLSA and California Labor Code. Plaintiffs' arguments are all based on the assumption that by voluntarily offering backpay, Defendants made a "concession" that the Account Executives were misclassified as exempt. But a genuine issue of fact remains as to whether the reclassification was an admission that wages were "concededly due" or were instead a resolution to a "bona fide dispute." In their Motion and Brief, Plaintiffs argue only that Defendants conceded the issue of classification by sending the Acknowledgement Letters and offering backpay. But the Letters specifically state:

> While we believe that the exempt classification for this and other
> important roles in the organization was a appropriate, we are
> purposely taking a conservative approach to classification based on
> our assessment of current job duties and recent developments in
> wage and hour laws.

9

(Jagielski Decl., Exh. G, p.1.) This is hardly a "concession" by Defendants that the Account Executives were misclassified.

In the cases Plaintiffs cite to support their theory of recovery of overtime pay under the UCL, recovery of wages under the UCL was predicated on a showing that the employees had actually been denied pay they were entitled to under the law. *See, e.g., Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 169-70 (2000) ("[f]ollowing a nonjury trial, the court found that defendant had failed to meet its burden of demonstrating that it was exempt from the applicable wage order by virtue of an employee ratification of the four-day 10-hour workweek"); *Bradstreet v. Wong*, 161 Cal. App. 4th 1440, 1449 (2008) ("[t]here is no dispute that during 2001 the Wins Corporations failed to pay earned wages and accrued vacation pay"). Defendant provides an opinion letter from the Department of Labor as evidence that the Account Executives were properly classified as exempt. (D.O.L. Opinion Letter FLSA2006-31, RJN Exh. A.) This is enough to create a genuine issue of fact. Plaintiffs' Motion for Partial Summary Judgment is DENIED as to the failure to pay back overtime wages as a basis for the UCL claim.

2**. SUMMARY ADJUDICATION**

In Plaintiffs' Notice of Motion and Motion, they ask the Court to summarily adjudicate 26 issues in the event that the Court does not grant their Motion for Partial Summary Judgment. Defendants argue that "the scope of Plaintiffs' Motion is unclear" because Plaintiffs do not address these individual issues in their moving papers. (Opp'n 21:5.) The Court agrees. To the extent that these issues were not addressed in the moving papers, Plaintiffs have failed to meet their initial burden of demonstrating an absence of a genuine issue of material fact as to these issues. *Celotex*, 477 U.S. at 323.

The Court notes that Plaintiffs address issue number 11 in their reply brief. Issue number 11 is:

> Whether the decision to use and send the Acknowledgement Letters, along with the actual mailing of the Acknowledgement Letters, occurred within the State of California. The mailings were sent to locations within and outside the State of California. A UCL claim can be founded upon unlawful conduct occurring in the State of California that affects its workers and non-California workers.

(Notice of Motion 3:21-25.) Plaintiffs fail to raise any arguments relating to this issue until their reply brief. A district court may refuse to consider new evidence submitted for the first time in a reply if the evidence should have been presented with the opening brief. *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 976 (N.D.Cal. 2006) (sustaining an objection to new evidence in a plaintiff's reply); *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (granting a motion to strike information and expert opinions introduced for the first time on reply and allowing the opposing party to submit its own supplemental evidence responding to the reply evidence); *American Traffic Solutions, Inc. v. Redflex Traffic Sys. Inc.*, No. CV-08-2051-PHX-FJM, 2009 WL 775104, at *1 (D. Ariz. Mar. 20, 2009) ("The remedy for dealing with new evidence first appearing in a reply is that we will not consider issues or evidence raised for the first time in plaintiff's reply."); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[W]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond."). "The opposing party should not have to incur the cost and effort of additional filings – a motion for leave to file a sur-reply, and the sur-reply itself – because the movants deliberately, or more likely inadvertently, held back part of their case." *Gutierrez v. 78th Judicial Dist. Court*, No. 1:07-cv-1268, 2009 WL 1507415, at *1, (W.D. Mich. May 29, 2009).

This Court declined to hear arguments relating to this issue in connection with class notice. At the September 14, 2009 hearing, the Court ordered notice be sent out, and informed Defendants that this issue would need to be addressed separately. Defendants have indicated that they intend to address this issue in a motion for partial summary judgment and/or a motion

11

1  for decertification after the opt-in/opt-out period for the class ends, on January 11, 2010.
2  Because Plaintiff failed to address the issue in its opening brief, and because the issue will be
3  fully briefed later in the proceedings, the Court DENIES Plaintiffs' Motion for summary
4  adjudication Issue 11 without prejudice to revisiting the issue later in the proceedings.
5       As to the remainder of the Issues, Plaintiffs' Alternative Motion for Summary
6  Adjudication is DENIED because Plaintiff failed to meet its initial burden of showing an
7  absence of genuine issue of material fact.

**DISPOSITION**

Plaintiffs' Motion for Summary Judgment, or in the alternative for Summary Adjudication, is DENIED.

IT IS SO ORDERED.

DATED: November 23, 2009

_____
Andrew J. Guilford
United States District Judge

12