# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGGIE WALLACE; TRAVIN LU'I; ERIK FRATES; on behalf of themselves and similarly situated employees,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE FINANCIAL CORPORATION; FULL SPECTRUM LENDING, INC.; DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. SACV 08-1463 AG (MLGx)<br><br>OMNIBUS ORDER |

This case challenges an employer's program of distributing back pay to employees allegedly mis-classified as exempt from overtime pay requirements. Five Motions are pending: (1) Motion to stay trial proceedings ("Motion to Stay"), filed by Defendants Full Spectrum Lending, Inc. ("Full Spectrum"), Countrywide Home Loans, Inc. ("Countrywide Home"), and Countrywide Financial Corporation ("Countrywide Financial") (collectively, "Defendants") (Docket Entry ("D.E.") 146); (2) Motion to bifurcate trial proceedings ("Motion to Bifurcate"), brought by Defendants (D.E. 148); (3) Motion to compel plaintiffs to file a trial plan ("Motion to

1  Compel"), filed by Defendants (D.E. 149); (4) Motion for partial summary judgment
2  ("Defendants' MSJ") as to labor code overtime claims and UCL claims derivative of the Fair
3  Labor Standards Act ("FLSA"), brought by Defendants (D.E. 150); and (5) Motion for partial
4  summary judgment ("Plaintiffs' MSJ") as to the first and seventh affirmative defenses, field by
5  Plaintiffs Reggie Wallace ("Wallace"), Travin Lu'I ("Lu'I"), and Erik Frates ("Frates")
6  (collectively, "Plaintiffs") (D.E. 154).

7  This long list of motions reveals an understandable desire to control and cabin for trial the
8  vast array of issues and variables that these types of cases typically present.  These motions can
9  indeed be helpful tools in securing the "just, speedy, and inexpensive determination of" actions.
10 Fed. R. Civ. P. 1.  But they can also have the opposite effect of making the trial's primary focus
11 the interpretation and application of unending pretrial rulings that unnecessarily complicate the
12 trial.  Almost inevitably during a trial, new issues and facts develop that complicate and call into
13 question excessively detailed pretrial rulings.  Such developments can leave all involved sorry
14 that they did not simply focus on a trial unfettered by excessive detailed pretrial rulings.
15 Keeping in mind this important factor in using pretrial motions to obtain a "just, speedy, and
16 inexpensive determination" of this lawsuit, the Court now turns to the pending matters.

17 After considering all papers and arguments submitted, the Court orders the following: (1)
18 the Motion to Stay is DENIED; (2) the Motion to Bifurcate is DENIED; (3) the Motion to
19 Compel is DENIED; (4) Defendants' MSJ is GRANTED in part and DENIED in part; and (5)
20 Plaintiffs' MSJ is GRANTED in part and DENIED in part.

**PRELIMINARY MATTERS**

**1.    EVIDENTIARY OBJECTIONS**

Both parties submitted voluminous evidentiary objections.  In motions with numerous
objections, "it is often unnecessary and impractical for a court to methodically scrutinize each
objection and give a full analysis of each argument raised."  *Doe v. Starbucks, Inc.*, No. SACV

1  08-0582 AG (CWx), 2009 WL 518773, at *1 (C.D. Cal. Dec. 18, 2009).  This is especially true

2  where, as here, "many of the objections are boilerplate recitations of evidentiary principles or

3  blanket objections without analysis applied to specific items of evidence." *Id.*  Where the Court

4  relied on evidence under objection, it addresses the objections in its analysis.

6  **2.      REQUESTS FOR JUDICIAL NOTICE**

8         Both parties submitted requests for judicial notice.  Under Federal Rule of Evidence 201,

9  "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1)

10 generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and

11 ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.

12 R. Evid. 201.

13       To support its Motion to Stay, Defendants request judicial notice of two documents: (1)

14 an appellate brief filed in *Esparza v. Two Jinn, Inc.*, Ninth Circuit Case No. 09-80153; and (2)

15 the Ninth Circuit's order in *Esparza v. Two Jinn, Inc.*, Case No. 09-80153, granting the petition

16 for permission to appeal the district court's September 21, 2009 order granting class action

17 certification.  The Court finds that document (2) meets the requirements of FRE 201, so the

18 Court takes judicial notice of document (2).  The Court takes judicial notice of the fact that

19 document (1) was filed, but does not take judicial notice of any purported factual matter in the

20 appellate brief.  *See Cal. ex rel Lockyer v. Mirant Corp.*, 266 F. Supp. 2d 1046, 1053-54 (N.D.

21 Cal. 2003).

22       To support Defendants' MSJ, Defendants request judicial notice of a law review article.

23 The Court finds that the law review article is not the type of document contemplated by FRE

24 201, and this request for judicial notice is DENIED.

25       To support Plaintiffs' MSJ, Plaintiffs request judicial notice of three documents: (1) U.S.

26 Department of Labor, Administrator's Interpretation No. 2010-1, March 24, 2010; (2) the May

27 11, 2009 Order Granting Plaintiffs' Motion for Class Certification ("Class Certification Order")

28 and Order Granting Plaintiffs' Motion for Class Notice, as well as the August 19, 2009 Ninth

1 Circuit Order denying Defendants' petition for permission to appeal this Court's order granting
2 class certification; and (3) Defendants' and Plaintiffs' appendices supporting and opposing an
3 earlier summary judgment motion. The Court finds that these documents meet the requirements
4 of FRE 201, so this request is GRANTED, to the extent that judicial notice is needed.

5 Finally, to support Plaintiffs' opposition to Defendants' MSJ, Plaintiffs request judicial
6 notice of (1) many documents previously filed in this case; and (2) the Declaration of Nancy
7 Jagielski ("Jagielski Decl."), filed in Orange County Superior Court to support a motion for class
8 certification before the case was removed to this Court. This request is GRANTED, to the extent
9 that judicial notice is needed.

10

11 **BACKGROUND**

12

13 This section provides a brief overview of the facts in this case. More detailed analysis of
14 the facts is provided in the analysis section.

15 Defendants Countrywide and Full Spectrum provide equity home loans and other secured
16 and collateralized financing to consumers nationwide. Plaintiffs were all employed by Full
17 Spectrum, a former subsidiary and current division of Countrywide, as Branch Account
18 Executives for various periods between 2002 and 2005. (Jagielski Decl. ¶ 2.) From 2002
19 through 2004, Full Spectrum classified its Branch Account Executives as "exempt" from
20 overtime pay requirements under the Fair Labor Standards Act ("FLSA") and California law.
21 (Jagielski Decl. ¶ 2.) In 2005, Full Spectrum opted to reclassify all of its Branch Account
22 Executives as "non-exempt" from overtime pay requirements and to pay both current and former
23 Branch Account Executives back overtime. (Jagielski Decl. ¶¶ 3-4.)
24 To implement the voluntary back pay program, Defendants sent each qualifying employee
25 an "Acknowledgement Letter" explaining the details of the back pay program. In each letter, Full
26 Spectrum stated its belief that Branch Account Executives worked an average of 5 hours of
27 overtime per week. (Jagielski Decl. ¶ 4; Exh. A, Acknowledgement Letter.) For each employee,
28 Full Spectrum then calculated five hours of overtime pay per week of employment during the

covered period and offered to pay the employee that amount.  (Jagielski Decl. ¶ 4.)

In June 2005, before filing this lawsuit, Plaintiffs Wallace and Sosa filed a FLSA collective action ("*Wallace I*") where they sought to collect overtime exceeding what the Branch Account Executives received under the back pay program.  (Declaration of Thomas R. Kaufman, D.E. 121-3 ("Kaufman Decl.") ¶2, Exhibit D.)  In *Wallace I*, Judge Alicemarie Stotler denied class certification as to employees who received money through the back pay program because they were not similarly situated, but granted certification as to the employees who did not receive back pay and ordered that notice be sent to that class.  (Kaufman Decl. ¶ 3; Exhibit E (*Wallace I* Order Granting in Part Conditional Certification).)  Of the 500 or so employees who were sent notice, 38 opted in to the *Wallace I* action.  Defendants made Rule 68 Offers of Judgment to those 38 employees who opted in, and all of those employees either accepted the offer or entered into individual settlements with Defendants.  (Kaufman Decl. ¶¶5, 12, Exh. R (Rule 68 Judgments) & Exh. S (settlement agreement).)

After *Wallace I* settled, on September 8, 2005, Plaintiffs brought this lawsuit in state court, alleging state law claims.  On January 20, 2006, Plaintiffs filed a First Amended National Class Action Complaint ("FAC") seeking the same recovery.  Defendants removed the action to Federal Court.  Judge Stotler remanded the case on October 27, 2006.

Plaintiffs filed their Second Amended National Class Action Complaint ("SAC") on December 1, 2008.  Defendants again removed to Federal Court.  In the SAC, for the first time in this lawsuit, Plaintiffs added a federal claim.  In the SAC, Plaintiffs bring four claims against Defendants, numbered as follows: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; (2) fraud and deceit; (3) violation of California Labor Code §§ 201, 202, 203, 510, and 1194; and (4) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 216(b).

On May 11, 2009, this Court certified Plaintiffs' claims in the SAC as a nationwide class and denied Defendants' partial motion for summary judgment.  (D.E. 40-42.)  Defendants petitioned the Ninth Circuit for permission to appeal the order granting the class certification, and the Ninth Circuit denied that petition on August 19, 2009.  (D.E. 55.)  On September 14, 2009,

1  this Court granted Plaintiffs' motion for approval of class notice. (D.E. 63.)  On November 23,
2  2009, this Court denied a motion for partial summary judgment, brought by Plaintiffs. (D.E.
3  100.) On May 17, 2010, this Court granted in part and denied in part another of Defendants'
4  motions for partial summary judgment. (D.E. 144.)

**ANALYSIS**

**1.    MOTION TO STAY**

Defendants move to stay this case pending the outcome of either *Esparza v. Two Jinn, Inc.*, Case No. 09-80153 (9th Cir.) or *Sullivan v. Oracle Corp.*, No. S170577 (California Supreme Court). In those two cases, the Ninth Circuit and California Supreme Courts are examining unsettled law. The issues pending in those cases have come up in this case, and this Court decided them in favor of the position advocated by Plaintiffs. Defendants argue that this lawsuit should be stayed because duplication of proceedings may arise if the Ninth Circuit or California Supreme Court decide the issues different than this Court did.

District courts have the "inherent power" to stay proceedings. *Rivers v. Walt Disney Co.*, 980 F.Supp. 1358, 1360 (C.D. Cal. 1997); *see also Landis v. North American Co.*, 299 U.S. 248, 255 (1936) ("the power [of a District Court] to stay proceedings is incidental to the power inherent in every court to control . . . its docket"). Courts generally consider four factors when determining whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

Here, the fact that this litigation has been dragging on for five years weighs heavily against a stay. The public has an interest in the efficient resolution of lawsuits. And because this case has been delayed for so long, the issuance of a stay could injure the class members. Finally, the

Court finds that Defendants have not shown that they would be irreparably harmed absent a stay. The Court finds that it need not examine the likelihood of success on the merits because, after balancing these factors, the Court finds that a stay is not warranted in this case.

Defendants' Motion to Stay is DENIED.

## 2. MOTION TO BIFURCATE

Defendants move to bifurcate the trial proceedings. Federal Rule of Civil Procedure 42(b) gives district courts discretion to bifurcate proceedings "[f]or convenience, to avoid prejudice, or to expedite and economize . . . ." The decision to bifurcate rests within the sound discretion of the trial court. *Hilao v. Estate of Marcos*, 103 F.3d 767, 782 (9th Cir. 1996).

Defendants want to limit the first phase of the trial to determining how much overtime the class members worked, on average, each week of the relevant period, the amount of overtime pay that would arise from any such overtime worked, how much back pay was already paid through the program, and whether the Plaintiffs could establish a classwide underpayment on those figures. Defendants argue that if this first phase ends with a finding that Plaintiffs could not establish classwide underpayment, there would be no need to try Plaintiffs' fraud claims because there would be no damages. Plaintiffs argue that bifurcation would not be efficient because it would result in duplication of trial proceedings. Specifically, many of the key witnesses would have to be called in both portions of the trial, and testimony would have to be repeated. The Court agrees with Plaintiffs here. The Court finds that bifurcation would not further judicial efficiency or convenience. These goals will be best served by trying the entire case together. Thus, the Court declines to exercise its discretion to bifurcate, and the Motion to Bifurcate is DENIED without prejudice.

## 3. MOTION TO COMPEL A TRIAL PLAN

Defendants also move to compel Plaintiffs to file a trial plan. Defendants argue that trial

plans are often ordered to assist in management of complex litigation. But, as Plaintiffs point out, the requirements of Central District Local Rule 16 obviate the need for an additional requirement in the form of a trial plan. Plaintiff is prepared to fully embrace Local Rule 16, and will be expected to do so. The Court finds that the extensive requirements of Local Rule 16 are sufficient in this case. The Motion to Compel is DENIED.

**4.     DEFENDANTS' MSJ**

Defendants move for partial summary judgment on four issues, numbered as follows:

> (1) Whether Defendants are entitled to partial summary judgment as to each member of the California Subclass for each month during the class period where a class member earned more than 1.5 times the minimum wage and more than half of the class member's pay represented commissions.
>
> (2) Whether Defendants are entitled to partial summary judgment as to each member of the nationwide class for each month during the class period where a class member earned more than 1.5 times the minimum wage and more than half of the class member's pay represented commissions, on the ground that a "Cel-Tech Safe Harbor" prevents the assertion of an Unfair Competition Law claim for misclassification as to any class member in any month where the California Commission Sales Exemption applies to that class member.
>
> (3) Whether Defendants are entitled to partial summary judgment as to each member of the Nationwide Class for each month during the class period where a class member earned more than 1.5 times the minimum wage and more than half of the class member's pay represented commissions, on the alternative ground that any conflict between the Unfair Competition Law and the Commission Sales Exemption must be resolved in favor of the Commission Sales Exemption as the more recent and more specific law.
>
> (4) Whether Defendants are entitled to partial summary judgment as to each member of the nationwide class for their claims under the Unfair Competition Law that are derivative of the Fair Labor Standards Act, on the ground that all such claims are preempted by the Fair Labor Standards Act, as amended by the Portal to Portal Act of 1947.

(Defendants' MSJ i:11-ii:9.) The Court finds that summary judgment is appropriate as to the first issue, but not as to issues 2, 3, or 4.

**4.1    Legal Standard for Summary Judgment Motions**

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *Id.* at 322-23.  If the non-moving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

**4.2    Defendants' First Issue**

As noted, the first issue for determination in Defendants' MSJ is whether summary judgment should be awarded as to "each member of the California Subclass for each month during the class period where a class member earned more than 1.5 times the minimum wage and more than half of the class member's pay represented commissions." (Defendants' MSJ i:11-15.) This request is based on the "Commission Sales Exemption." IWC Wage Order 4-2001 § 3(D) (codified at 8 Cal. Code Regs. § 11070).  Under the Commission Sales Exemption, an employer is not required to pay overtime to an employee if the employee's "earnings exceed one and one-half times the minimum wage if more than half of that employee's compensation represents

9

1  commissions." *Id.* An exemption determination can vary from one period to another, such that
2  employees qualify for the exemption in some months, but not in other months. *Dunbar v.*
3  *Albertson's, Inc.*, 141 Cal. App. 4th 1422, 1426-27 (2006) ("employees' exempt or non-exempt
4  status can vary on a week by week basis").

5       Defendants present expert findings, based on payroll records, that members of the
6  California subclass met the Commission Sales Exemption in 56.7 % of the total relevant work
7  months. (Crandall Decl. ¶ 12.) Plaintiffs object to the Crandall Declaration paragraph 12 on
8  many grounds, including that the declaration lacks foundation, lacks personal knowledge, is
9  based on documents that are not authenticated, is opinion, and violates the Best Evidence Rule.
10 The Court first addresses the Best Evidence Rule. A duplicate of a document is admissible to the
11 same extent as the original unless "(1) a genuine question is raised as to the authenticity of the
12 original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the
13 original." Fed. R. Evid. 1003. It is unclear from Plaintiffs' papers why Plaintiffs object on this
14 ground. Plaintiffs have not raised a question as to the authenticity of any original documents, or
15 given any reason why it would be unfair to admit documents. Objections such as this are an
16 indication to the Court that objections are boilerplate recitations instead of products of careful
17 consideration. This objection fails.

18      The remaining objections fail as well. The declaration and attached exhibits set forth the
19 evidence upon which paragraph 12 is based. Further, the declaration establishes Mr. Crandall as
20 an expert (and Plaintiffs do not challenge his qualifications), so opinion testimony is appropriate.
21 Fed. R. Evid. 702. The objections to the Crandall Declaration are OVERRULED. The Court
22 notes that Plaintiffs are not alone in their practice of submitting boilerplate objections. (*See, e.g.*,
23 Defendants' Objections to Boling Decl., Docket Entry 163 (setting forth 46 objections, in 22
24 pages, to an 18 paragraph, 4 page declaration).)

25      Plaintiffs argue that Defendants did not specifically ask for summary adjudication, and that
26 the Court should therefore decline to grant summary adjudication for each class member for each
27 month the employee is identified as exempt under the expert's analysis. (Plaintiffs' Opp'n 4:20.)
28 Plaintiffs seem to be asking the Court to make a distinction between partial summary judgment

1  and summary adjudication, but the Court finds no authority to draw so fine a line. However, the
2  Court will look at the specific language in the Notice of Motion to determine the level of cabining
3  here required.

4      The issue presented in Defendants' Notice of Motion is:

5      (1) Whether Defendants are entitled to partial summary judgment as
       to each member of the California Subclass for each month during the
6      class period where a class member earned more than 1.5 times the
       minimum wage and more than half of the class member's pay
7      represented commissions.

8  (Defendants' MSJ i:11-15.) There is some ambiguity in how this issue is stated, and the Court
9  finds that it does not specifically ask for a specific determination as to each member and each pay
10 period. The Court also finds that this level of cabining would not "secure the just, speedy and
11 inexpensive determination of" this lawsuit.

12     The Court finds that there is no dispute as to the fact that some employees qualified for the
13 exemption in some time periods, so summary judgment is GRANTED as to Defendants'
14 Commission Sales Exemption affirmative defense to the Labor Code overtime claim, limited to
15 the months in which the defense applies, and to the class members to whom the defense applies.

16

17     **4.3     Defendants' Second Issue**

18

19     The next issue is whether "a '*Cel-Tech* Safe Harbor' prevents the assertion of an Unfair
20 Competition Law claim for misclassification as to any class member in any month where the
21 California Commission Sales Exemption applies to that class member." (Defendants' MSJ i:16-
22 23.)

23     In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163
24 (1999), the California Supreme Court held that "[w]hen specific legislation provides a 'safe
25 harbor,' plaintiffs may not use the general [UCL] to assault that harbor." *Id.* at 182. This is often
26 referred to as the "*Cel-Tech* Safe Harbor." *See generally, e.g.*, *Olsweski v. Scripps Health*, 30
27 Cal. 4th 798 (2003). Defendants ask the Court to award summary judgment on its "Cel-Tech
28 Safe Harbor" affirmative defense.

1    Defendants argue that because the Commission Sales Exemption, 8 Cal. Code Regs. §
2 11070, allows employers to exempt certain class members from overtime pay during certain pay
3 periods, the *Cal-Tech* Safe Harbor should apply to Plaintiffs' UCL claims.  Plaintiffs argue that
4 even if the Commission Sales Exemption applies, violations of the FLSA form the basis for all
5 class members, not just the UCL, so summary judgment should be denied.  The Court agrees with
6 Plaintiff.
7    The *Cel-Tech* Safe Harbor would prevent the UCL claim based solely on violations of
8 California's labor laws if the Commission Sales Exemption applied to the entire UCL claim.  But
9 that's not the case here.  The UCL claims are based on all of the alleged unlawful practices,
10 including violations of California's labor code in months that the Commission Sales Exemption
11 did *not* apply and violations of the FLSA.  The unlawful prong of the UCL prohibits any practices
12 forbidden by law, "be it civil or criminal, federal, state, or municipal, statutory, regulatory, or
13 court-made."  *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994).  Factual issues
14 remain as to when and whether Defendants violated California's labor code, as well as whether
15 Defendants violated the FLSA, so summary judgment is DENIED on this issue.

**4.4     Defendants' Third Issue**

The third issue for determination is whether "any conflict between the Unfair Competition Law and the Commission Sales Exemption must be resolved in favor of the Commission Sales Exemption as the more recent and more specific law" and whether Defendants are therefore "entitled to partial summary judgment as to each member of the Nationwide Class for each month during the class period where a class member earned more than 1.5 times the minimum wage and more than half of the class member's pay represented commissions." (Defendants' MSJ i:24 - ii:3.)  Because the UCL claim is based on more than the Commission Sales Exemption, *see* Section 4.3, this issue is DENIED as moot.

**4.5     Defendants' Fourth Issue**

The fourth issue is whether the UCL claims that are derivative of the FLSA are preempted by the FLSA. (Defendants' MSJ ii:5-9.) Although the Ninth Circuit has yet to address this issue, many district courts in the Ninth Circuit, including this one, have held that the FLSA does not preempt claims for violation of the UCL. *Esparza v. Two Jinn, Inc.*, No. SACV 09-0099 AG (RNBx), 2009 WL 2912657, at *2-3 (C.D. Cal. Sept. 9, 2009); *see also Bureerong v. Uvawas*, 922 F. Supp. 1450, 1477 (C.D. Cal. 1996); *Bahramipour v. Citigroup Global Markets, Inc.*, No. C 04-4440 CW, 2006 WL 449132 (N.D. Cal. Feb. 22, 2006). Accordingly, summary judgment is DENIED as to Defendants' fourth issue.

**4.6     Conclusion**

Defendants' MSJ is GRANTED as to Defendants' Commission Sales Exemption affirmative defense to the Labor Code overtime claim, limited to the months in which the defense applies and the class members to whom it applies. Summary Judgment is DENIED as to the remaining issues.

**5.     PLAINTIFFS' MSJ**

Plaintiffs move for partial summary judgment on Defendants' seventh affirmative defense and Plaintiffs' first claim. In the alternative, Plaintiffs move for summary adjudication of seven individual issues. The first issue concerns Defendants' seventh affirmative defense. The second through sixth issues concern Plaintiffs' first claim. The seventh issue concerns both the seventh affirmative defense and the first claim. The issues are numbered as follows:

> (1) Whether [Branch Account Executives] qualify as bona fide administrative employees exempt under section 13(a)(1) of the Fair Labor Standards Act, 29 U.S.C. § 213(a)(1).

  (2) Whether Defendants sent standardized Acknowledgment Letters to former and current [Branch Account Executives] on and after April 2005 regarding back overtime compensation for work performed.

  (3) Whether the [Branch Account Executives] were entitled to seek the full amount of overtime compensation for work performed during the period from January 20, 2002 to December 31, 2004.

  (4) Whether Defendants failed to pay the [Branch Account Executives] or, in the alternative, those persons who did not signed [sic] the Acknowledgment Letters, the full amount of overtime compensation for work performed during the period from January 20, 2002 to December 31, 2004.

  (5) Whether Defendants violated the unlawful prong of the UCL by misclassifying the [Branch Account Executives] or, in the alternative, those persons who did not signed [sic] the Acknowledgment Letters, as exempt under section 13(a)(1) of the Fair Labor Standards Act, 29 U.S.C. § 213(a)(1) and failing to timely pay full overtime compensation.

  (6) Whether the Plaintiffs and Class members who received the Acknowledgement Letter(s) or, in the alternative, those persons who did not signed [sic] the Acknowledgment Letters, are entitled to recover restitution of unpaid or underpaid back overtime compensation under the unlawful prong of the UCL claim for the unlawful practices committed by the Defendants.

  (7) Whether an order shall be issued in favor of Plaintiffs and Class members or, in the alternative, those persons who did not signed [sic] the Acknowledgment Letters, against Defendants, and each of them, under the unlawful prong of the UCL claim (Count I) in the SAC and deny Defendants' 7th Affirmative Defense in their Answer to the SAC or, in the alternative, that the Uncontroverted Facts and Conclusions of Law are established in the action consistent with the Court's ruling.

(Plaintiffs' MSJ, 2:19 -3:17.)   The Court finds that summary judgment should be awarded only for the second issue presented, and denied as to the rest of the Motion.

  **5.1**  **Defendants' Seventh Affirmative Defense**

  As noted, Plaintiff asks the Court for summary judgment on Defendants' seventh affirmative defense.  The first individual issue for determination in Plaintiffs' MSJ, which concerns Defendants' seventh affirmative defense, is whether the Branch Account Executives "qualify as bona fide administrative employees exempt under section 13(a)(1) of the Fair Labor

Standards Act, 29 U.S.C. § 213(a)(1)." (Plaintiffs' MSJ, 2:19 -21.) For the reasons that follow, the Court denies summary adjudication as to the first individual issue, and therefore denies summary judgment as to the seventh affirmative as well.

### 5.1.1   Burden of Proof

The parties disagree on who bears the burden of proving whether an employee is exempt under the FLSA. While the burden of proof does not affect whether there is a disputed issue of fact on this affirmative defense here, the Court finds that the parties adequately briefed the issue, and a finding of law at this stage will facilitate trial proceedings, so the Court addresses the issue.

"The application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 490, 493 (1974) (citing *A. H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945); *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Walling v. General Industries Co.*, 330 U.S. 545, 547-548, (1947); *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 295 (1959)). Defendant argues that the burden is only on the employer in cases dealing with individual employees, but that in class actions, the employees have the burden to present collective proof of misclassification. To support their argument, Defendants cite *Marlo v. United Parcel Service, Inc.*, 251 F.R.D. 476, 481-82 (C.D. Cal. 2008). But the *Marlo* court dealt with decertifying a class action with claims under California's labor laws, not summary adjudication of claims under the FLSA. United States Supreme Court precedent makes it clear that exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof on that defense. *Corning*, 417 U.S. at 493; *see also Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) (city had burden of proving that 119 employees met each element of FLSA exemption); *Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042, 1051 (C.D. Cal. 2006) (noting that "an employer who does not pay overtime bears the burden of proving an exemption" under the FLSA in summary judgment motion by certified class). The Court finds that Defendants bear the burden of proof as to whether the Branch Account Executives qualify as "bona fide

15

administrative employees" under the FLSA.

### 5.1.2   Exemption

Under Section 213(a)(1), an employee "employed in a bona fide executive, administrative, or professional capacity," is exempt from the FLSA minimum wage and overtime requirements. For its employees to fall within the meaning of an "employee employed in a bona fide administrative capacity" an employer must prove: (1) the employee's salary is at least $455 per week; (2) the employee's "primary duty is performance of office or non-manual work that is directly related to the management or general business operations of the employer or the employer's customers;" and (3) the employee's "primary duty includes the exercise of discretion and independent judgment" concerning "matters of significance." 29 C.F.R. § 541.200.

Plaintiffs and Defendants present conflicting evidence as to the nature of Plaintiffs' job duties. (*See, e.g.*, Plaintiffs' UF 6 (citing Boling Decl.); *compared with* Defendants' Response to UF 6 (citing Ferre Depo., Zielke Depo.).) Regardless of who has the burden of proof, genuine issues of material fact remain as to the second and third prongs of the "bona fide administrative capacity" test. Accordingly, Plaintiffs' MSJ is DENIED as to Plaintiffs' first issue for determination and Defendants' seventh affirmative defense.

### 5.2   **Plaintiffs' First Claim, for Violations of the UCL**

#### 5.2.1   Plaintiffs' First Claim as a Whole

Plaintiffs next move for partial summary judgment as to Plaintiffs' first claim, which is for violations of the UCL. Factual disputes remain as to whether Defendants' practices violated the UCL. *See* Section 4.3. Summary Judgment is DENIED as to Plaintiffs' first claim as a whole. But Plaintiffs also asked the Court for summary adjudication on the second through sixth individual issues, concerning Plaintiffs' first claim. The Court now addresses these issues.

### 5.2.2 Plaintiffs' Second Issue

The second issue for determination is whether "Defendants sent standardized Acknowledgment Letters to former and current [Branch Account Executives] on and after April 2005 regarding back overtime compensation for work performed." (Plaintiffs' MSJ, 2:22 -24.) The undisputed facts support this statement. (Plaintiffs' UF 32.) Summary adjudication is GRANTED as to the second issue.

### 5.2.3 Plaintiffs' Third through Sixth Issues

The third through sixth issues for determination all turn on whether Plaintiffs were exempt. Disputed issues of fact remain as to the nature of Plaintiffs' job duties, and therefore as to whether they were exempt under 29 C.F.R. § 541.200. *See* Section 5.1. Because the exemption issue is disputed, summary adjudication is DENIED as to the third through sixth issues.

**5.3   Plaintiffs' Seventh Issue**

The seventh and final issue for determination is based on the first six issues. Plaintiffs ask the Court to issue an order in favor of Plaintiffs and Class members, "or, in the alternative, those persons who did not signed [sic] the Acknowledgment Letters, against Defendants, . . . under the unlawful prong of the UCL claim . . . and deny Defendants' 7th Affirmative Defense in their Answer to the SAC or, in the alternative, that the Uncontroverted Facts and Conclusions of Law are established in the action consistent with the Court's ruling." Because genuine issues of material facts remain as to the other issues, summary adjudication is DENIED as to the seventh issue as well.

### 5.4 Conclusion

Plaintiffs' MSJ is GRANTED as to Plaintiffs' second individual issue. Plaintiffs' MSJ is DENIED as to the rest of the Motion.

## DISPOSITION

Defendants' Motion to Stay is DENIED.

Defendants' Motion to Bifurcate is DENIED without prejudice.

Defendants' Motion to Compel is DENIED.

Defendants' MSJ is GRANTED as to Defendants' Commission Sales Exemption affirmative defense to the Labor Code overtime claim, limited to the months in which the defense applies, and to the class members to whom the defense applies. Defendants' MSJ is DENIED as to the remaining issues.

Plaintiffs' MSJ is GRANTED as to Plaintiffs' second issue. Plaintiffs' MSJ is DENIED as to the rest of the Motion.

IT IS SO ORDERED.

DATED: August 12, 2010

_____
Andrew J. Guilford
United States District Judge

18