SHEPPARD MULLIN RICHTER & HAMPTON, LLP
Thomas R. Kaufman (SBN 177936)
tkaufman@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
Telephone: (310) 228-3700
Facsimile: (310) 228-3701

Greg S. Labate (SBN 149918)
glabate@sheppardmullin.com
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626
Telephone: (714) 513-5100
Facsimile: (714) 513-5130

SEYFARTH SHAW LLP
Christopher A. Crosman (SBN 190336)
ccrosman@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendants
FULL SPECTRUM LENDING, INC., COUNTRYWIDE HOME LOANS, INC., and COUNTRYWIDE FINANCIAL CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| REGGIE WALLACE, ERICK SOSA, on behalf of themselves and similarly situated employees, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE FINANCIAL CORPORATION, FULL SPECTRUM LENDING, INC, DOES 1-10, INCLUSIVE, <br><br> Defendants. | Case No. SACV 08-01463 JST (MLGx) <br><br> **DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Judge:   Hon. Josephine Staton Tucker <br> Date:   October 24, 2011 <br> Time:   10:00 a.m. <br> Crtrm:   10-A <br><br> [Filed concurrently with Opposition to Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law; Separate Statement of Evidentiary Objections; Declaration of T. Kaufman] |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION AND SUMMARY OF OPPOSITION ........................................ 1

II.    RELEVANT FACTS ................................................................................................ 2

    A.     Branch Account Executives Were Treated as Exempt and Paid a Base
         Salary Plus Variable Incentive Pay ................................................................ 2

    B.     The Employees Who Plaintiffs Surveyed Admitted That Their Pay
         Was For All the Hours They Worked and That They Understood They
         Were Ineligible for Premium "Overtime" Pay ................................................ 3

III.   LEGAL ARGUMENT .............................................................................................. 6

    A.     Plaintiffs' Motion for Partial Summary Judgment Should Be Denied
         on The Calculation of Overtime Damages Issue .............................................. 6

         1.     The Law Is Firmly Established That Overtime on Commissions
               and Bonuses is Calculated Using the Half-Time Method ................... 6

         2.     The Overwhelming Weight of Authority Holds That Back
               Overtime Pay Owed on Salary in a FLSA Misclassification
               Case is Also Calculated Using the Half-Time Method ....................... 8

         3.     The Outlier District Court Cases Plaintiffs Cite Fail to Account
               for the DOL's Interpretation of Its FLSA Regulations or the
               Unanimous Opinion of Circuit Courts ............................................... 13

    B.     Plaintiffs' Motion for Partial Summary Judgment on Their Entitlement
         to Prejudgment Interest Should Also be Denied ........................................... 15

         1.     Prejudgment Interest Is Not "Restitution" at All, and thus Not
               Recoverable Under the UCL ............................................................... 15

         2.     Any Prejudgment Interest That Might Be Awarded Under the
               UCL Would be 7% Simple Interest Per the California
               Constitution ......................................................................................... 18

IV.    CONCLUSION ...................................................................................................... 19

W02-WEST:2TRK1\403917961.5

1

<u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>Federal Cases</u>

4

*Ahle v. Veracity Research Co.*

5

    738 F. Supp. 2d 896 (D. Minn. 2011) ............................................................... 14

6

*Auer v. Robbins*

7

    519 U.S. 452 (1997) ...................................................................................... 8, 13

8

*Bahramipour v. Citigroup Global Markets, Inc.*

9

    2006 WL 449132 (N.D. Cal. February 22, 2006) ........................................... 16

10

*Blackmon v. Brookshire Grocery Co.*

11

    835 F.2d 1135 (5th Cir. 1988) ................................................................... 10, 14

12

13

*Boyle v. Barber & Sons, Co.*

14

    2005 U.S. Dist. LEXIS 47314 (W.D. Mo. Mar 4, 2005) .................................. 15

15

*Brown v. Nipper Auto Parts and Supplies, Inc.*

16

    2009 WL 1437836 (W.D. Va. May 21, 2009) .................................................. 14

17

*Clements v. Serco, Inc.*

18

    530 F.3d 1224 (10th Cir. 2008) ........................................................................ 10

19

20

*Desmond v. PNGI Charlestown Gaming*

21

    630 F.3d 251 (4th Cir. 2011) ......................................................1, 10, 11, 12, 13

22

*Desmond v. PNGI Charlestown Gaming*

23

    630 F.3d 351 (4th Cir. 2011) ............................................................................ 10

24

*Hunter v. Sprint Corp.*

25

    453 F. Supp. 2d 44 (D.C. 2006) ....................................................................... 14

26

*Long Island Care at Home, Ltd. v. Coke*

27

    551 U.S. 158 (2007) ...................................................................................... 8, 13

28

-ii-

*Monahan v. Emerald Performance Materials, LLC*
    705 F. Supp. 2d 1206 (W.D. Wash. Feb. 25, 2010) ............................................ 14

*Overnight Motor Transportation Co. v. Missel*
    316 U.S. 572 (1942) ................................................................ 10, 14

*Rainey v. American Forest & Paper Association*
    26 F. Supp. 2d 82 (D.D.C. 1998) ................................................ 14, 15

*Russell v. Wells Fargo Bank, N.A.*
    672 F. Supp. 2d 1008 (N.D. Cal. 2009) ...................................... 12, 13, 14

*Saizan v. Delta Concrete Products Co., Inc.*
    209 F. Supp. 2d 639 (M.D. La. 2002) ................................................ 15

*Scott v. OTS Inc.*
    2006 WL 870369 (N.D. Ga. Mar. 31, 2006) ........................................ 14

*In re Texas EZ Pawn Fair Labor Standards Act Litigation*
    633 F. Supp. 2d 395 (W.D. Tex. 2008) .............................................. 14

*Tomlinson v. Indymac Bank, F.S.B.*
    359 F. Supp. 2d 898 (C.D. Cal. 2005) ............................................... 16

*Torres v. Bacardi Global Brands Promotions, Inc.*
    482 F. Supp. 2d 1379 (S.D. Fla. 2007) .............................................. 14

*Tumulty v. FedEx Ground Package System, Inc.*
    2005 U.S. Dist. LEXIS 25997 (W.D. Wash. Aug. 16, 2005) ........................... 14

*Uphoff v. Elegant Bath, Ltd.*
    167 F.3d 399 (7th Cir. 1999) ....................................................... 16

*Urnikis Negro v. Am. Family Prop. Servs.*
    616 F.3d 665 (7th Cir. 2010) ................................................... 10, 14

Defendants' Brief In Opposition to Plaintiffs' MSJ
Case No. SACV 08-01463 JST (MLGx)

*Valerio v. Putnam Assocs., Inc.*

 173 F.3d 35 (1st Cir. 1999) ................................................................ 10

<u>State Cases</u>

*Californians for Population Stabilization v. Hewlett-Packard Co.*

 58 Cal. App. 4th 273 (1997) ................................................................ 17

*Cortez v. v. Purolator Air Filtration Products Co.*

 23 Cal. 4th 163 (2000) ................................................................ 15, 17

*Dean Witter Reynolds, Inc. v. Superior Court*

 211 Cal. App. 3d 758 (1989) ................................................................ 15

*Harris v. Investor's Business Daily, Inc.*

 138 Cal. App. 4th 28 (2006) ................................................................ 16

*Jaffe v. Crawford Ins. Co.*

 168 Cal. App. 3d 930 (1985) ................................................................ 15

*Korea Supply Co. v. Lockheed Martin Corp.*

 29 Cal. 4th 1134 (2003) ................................................................ 15

*Michaelson v. Hamada*

 29 Cal. App. 4th 1566 (1994) ................................................................ 18

*People ex rel. City of Santa Monica v. Gabriel*

 186 Cal. App. 4th 882 (2010) ................................................................ 17

*Pineda v. Bank of America, N.A.*

 50 Cal. 4th 1389 (2010) ................................................................ 16, 17, 18

<u>Federal: Statutes, Rules, Regulations, Constitutional Provisions</u>

29 C.F.R. § 778.209 ................................................................ 7

29 C.F.R. § 778.113 ................................................................ 11

29 C.F.R. § 778.114 ................................................................ *passim*

-iv-

State: Statutes, Rules, Regulations, Constitutional Provisions

California Constitution, Art. XV, § 1 ........................................................... 18

Code Civ. Proc. § 1021.5 ............................................................................. 17

Labor Code § 203 ........................................................................................ 17

Labor Code § 218.5 ..................................................................................... 17

Labor Code § 218.6 .......................................................................... 1, 2, 16, 18

Defendants' Brief In Opposition to Plaintiffs' MSJ
Case No. SACV 08-01463 JST (MLGx)

## I.  <u>INTRODUCTION AND SUMMARY OF OPPOSITION</u>

Plaintiffs' motion seeks two dispositive rulings that are both contrary to law: (1) if the class is found to have been misclassified under FLSA standards, it is entitled to receive back overtime for each overtime hour worked, on both the "bonus" and salary portions of its pay, at the rate of 1.5 times the weekly compensation divided by 40 hours; and (2) if the class prevails on the FLSA-derivative Unfair Competition Law ("UCL") claim, the class is entitled to prejudgment interest calculated at 10% annual simple interest as provided under Labor Code Section 218.6.  Plaintiffs' motion should be denied in its entirety.

First, on the damages calculation issue, Plaintiffs' arguments run contrary to the longstanding enforcement position of the U.S. Department of Labor ("DOL"), as most recently articulated in opinion letter FLSA 2009-3.  This Court is required to defer to the DOL's construction of the FLSA regulations because the DOL's construction is not plainly erroneous.  Unlike rulings of the California Division of Labor Standards Enforcement ("DLSE"), DOL opinions concerning interpretation of their own regulations are entitled to heightened deference.

In addition, the Fourth Circuit recently issued a decision in *Desmond v. PNGI Charlestown Gaming*, 630 F.3d 251 (4th Cir. 2011) that contains a detailed history of the development of the law on calculating back overtime in an exempt misclassification case, and that decision explains that Plaintiffs' arguments on this point run contrary to the interpretation of <u>all five circuits</u> that have addressed the issue (the First, Fourth, Fifth, Seventh and Tenth).  Plaintiffs are thus left to rely only upon a few outlier district court decisions that are unpersuasive and have been criticized as poorly reasoned by numerous other courts.

Furthermore, to the extent Plaintiffs argue that Branch Account Executives understood that the wages they received were intended to cover only 40 hours of work per week, Plaintiffs have absolutely no evidence to support this position.  On

1

the contrary, Plaintiff Reggie Wallace admitted that his pay was intended to cover whatever hours he worked when his own counsel posed the question to him at his deposition.  Other class members who have been deposed testified the same way.  As such, the evidence is <u>undisputed</u> that employees understood that they were required to work whatever hours were necessary to complete their duties without eligibility for additional hourly pay.  For all those reasons, Plaintiffs' motion for partial summary judgment on the damages calculation issue should be denied.

On the prejudgment interest issue, Plaintiffs' motion should also be denied.  Plaintiffs seek to rely on Labor Code Section 218.6, which provides for prejudgment interest in an action "for nonpayment of wages."  However, it is now well established under California decisional law that a UCL action is not an "action for wages" even where it seeks restitution of earned wages.  Furthermore, UCL actions are limited to recovering "restitution," while an award of prejudgment interest is <u>compensatory</u> rather than restitutionary.  Accordingly, to the extent the Court considers only Plaintiffs' UCL claims, Plaintiffs lack any grounds to recover prejudgment interest if they somehow prevail at trial.  For that reason, Plaintiffs' motion for partial summary judgment should be denied on this issue as well.

In sum, because Plaintiffs seek rulings on legal issues that are squarely contrary to established law, Defendants respectfully request that Plaintiffs' motion for partial summary judgment be denied in its entirety.

## II.   RELEVANT FACTS

### A.   Branch Account Executives Were Treated as Exempt and Paid a Base Salary Plus Variable Incentive Pay

At docket number 153-1, pages 13-16, Defendants submitted a declaration of Timothy Holder, a Countrywide Manager and Bonus Analyst during the relevant class period, who explained the compensation structure for Branch Account

2

Executives.[1]  Generally speaking, prior to the 2005 reclassification, Full Spectrum Lending Branch Account Executives received their pay in two components: salary and incentive pay (referred to either as "commission" or "bonus").[2]  The "salary" was a fixed amount that the Branch Account Executives received each pay period irrespective of hours worked.  The "bonus" was derived primarily as a percentage of the dollar value of the loans that the Branch Account Executives originated on a monthly basis.  There was also a small quarterly bonus that Account Executives could earn based on their quarterly loan production.[3]  It is undisputed that Branch Account Executives were never promised that they would receive additional overtime pay tied directly to hours they worked (as opposed to production).

### B. The Employees Who Plaintiffs Surveyed Admitted That Their Pay Was For All the Hours They Worked and That They Understood They Were Ineligible for Premium "Overtime" Pay

Although Reggie Wallace states in conclusory fashion in his declaration in support of partial summary judgment that his work status as "regular full time" translated into his only being paid to work 40 hours per week, he actually admits that he regularly worked overtime for Full Spectrum without receiving any extra overtime pay:  "between 2002 and 2004, I worked more than 40 hours each week, which varied in the number of hours each week, but did not receive any overtime compensation."[4]  Plaintiffs have no admissible evidence that Branch Account Executives were paid just for 40 hours or that their "full time" status was intended to equate to working exactly 40 hours per week.  Nor does Wallace lay any foundation

---

[1]     Holder Dec. in supp of 6-11-2010 Partial MSJ (Docket No. 153-1, pp. 13-16), ¶¶1-3.

[2]     The title of the incentive pay is irrelevant here.  Under both California law and the FLSA, the rules for calculating overtime on production bonuses are the same on commissions.  *See generally* DLSE Enforcement Manual, Section 49.2.1.2, http://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf

[3]     *Id.* at ¶¶4-5

[4]     Wallace Dec. in Supp of Pltf's Partial MSJ ¶¶ 5-6.

1  that anyone told him that the pay he received was only for working 40 hours.[5]

2      By contrast, when Wallace's own counsel asked him during his deposition

3  whether he understood that the pay he received was irrespective of the hours he

4  worked, Wallace confirmed that he understood he was an exempt employee not

5  entitled to receive extra pay for extra hours:

6      MR. FIOLA:  Let me remind you what exempt is. Exempt
7      is an employee who's salaried, who's either paid on the
8      basis in which he's an administrative official, executive or
9      professional, and in which he receives a salary <u>and there is</u>
       <u>no time limitations as to the performance of his job duties.</u>

10     As a nonexempt employee, the employee will work 40
11     hours a week.  If he works in excess of 40 hours a week,
12     he's entitled to overtime compensation, or if he works in
       excess of eight hours a day, he's entitled to overtime
13     compensation as a nonexempt employee.  The employer
14     controls his job duties.

15     Q.    <u>Do you believe you were an exempt or nonexempt</u>
16     <u>employee?</u>

17     A.    <u>Exempt.</u>[6]

18

19     Similarly, Plaintiff Travin Lu'i testified that he always worked in excess of 40

20  hours because he could not have completed his essential weekly duties in 40 hours:

21

22  _____
      [5]    Plaintiffs' counsel, who lacks foundation to authenticate Countrywide
23  of Full Spectrum policies, nonetheless attempts to authenticate and interpret a
    purported 2002 handbook, which may or may not have applied to class members,
24  and which merely sets forth basic definitions of exempt, non-exempt, full-time and
    part-time employees.  In addition to being unauthenticated, nothing in the handbook
25  states that employees are paid to work only 40 hours, as opposed to regularly being
    scheduled for 40 hours.

26     [6]    Declaration of Thomas Kaufman ("Kaufman Dec.") ¶ 2, Ex. "A" (R.
    Wallace Deposition), 101:7-22.  This is consistent with a declaration Mr. Wallace
27  signed on October 31, 2005, a copy of which is attached to the Kaufman Declaration
    as Exhibit "I."

28

4

Q.     So the ten hours would get you to 50 and then the Saturday would add four more hours and you got to 54; is that right?

A.     Correct.

Q.     Why did you feel like you needed to work the number of hours for Full Spectrum Lending?

A.     In order to get enough loans not to get fired.

*Q.     Wouldn't you have been able to meet the minimum requirements by working less overtime than that?*

*A.     No.*

Q.     Why do you feel like you couldn't have fulfilled your requirements working, say, a 40-hour week plus the Saturday, the one Saturday?

A.     Well, if I worked an eight-hour day, which is 8:15 to whatever eight hours is, majority of time people aren't home.  So I'm not getting a hold of anyone.  I'm not utilizing my time wisely.  So you have to stay after in order to contact borrowers.[7]

        Furthermore, the parties in this action deposed numerous class members who responded to Plaintiffs' survey about the hours they worked.  To the extent the issue arose, these employees consistently confirmed that they were hired to work whatever hours were necessary and that they knew they would not receive hourly overtime pay for working longer hours.[8]  For example, consider survey respondent

---

        [7]     Kaufman Dec. ¶ 3, Ex. "B" (T. Lui Deposition). 69:12-70:19 (emphasis added; objections omitted).

        [8]     Kaufman Dec. ¶ 4, Exs. "D" (Alex Calvo, understood working Saturdays was part of the job), "E" (Jeffrey Birch; didn't appeal back pay offer because never expected additional hourly pay and was happy to get it; also did not work a set schedule), "F" (Charles Johnson-Starr: understood that he would have to work as many hours as needed in order to get the job done).

Adelita Castro, who admitted she always understood she was paid to work whatever hours were necessary to complete her job duties:

> Q.    If you look at the acknowledgement, did you read it before you signed it?
>
> A.    I mean truthfully, this was like the very first experience I ever had with a company giving me back overtime, because we have just always been trained as loan officers that you have to work however many hours you work. So for them to do this was kind of like you know, I don't know it was -- it was kind of shocking for them to do to do the back pay and everything like that.[9]

Plaintiffs have introduced no evidence that employees who allegedly worked long hours each week ever complained that this was inconsistent with the terms of their offer letter.  Rather, the evidence is undisputed that everyone understood that the pay they received was to compensate them for all the hours they worked.

## III.    LEGAL ARGUMENT

### A.    Plaintiffs' Motion for Partial Summary Judgment Should Be Denied on The Calculation of Overtime Damages Issue

#### 1.    The Law Is Firmly Established That Overtime on Commissions and Bonuses is Calculated Using the Half-Time Method

It is not entirely clear, but Plaintiffs appear to be arguing that even on the incentive compensation ("bonus") portion of Branch Account Executive's pay, the proper method of calculating overtime is to divide total "bonus" by 40 hours per week and to pay 1.5 times that regular rate for each hour of overtime.  It is unclear because such an argument is inconsistent with the method used by Plaintiffs' own

---

[9]    Kaufman Dec. ¶ 4, Ex. "C"  (A. Castro Dep.) 51:25-52:8 (emphasis added).

damages expert and runs contrary not only to FLSA authority, but also to California authority.  In short, no authority of any sort supports Plaintiffs' argument here.[10]

Unlike salary, incentive pay that increases with an employees production or sales level is always deemed to pay the employee's straight time for all hours worked.  The California Division of Labor Standards Enforcement explains this thoroughly in its Enforcement Manual:

> **Piece Workers, Production Bonus Workers or Commission Workers** : (See O.L. 1993.02.22-1, 1988.06.15, 1988.03.28, 1994.06.17-1; 1988.07.14, 1987.02.17). Either of the following two methods can be used to determine the regular rate for purposes of computing overtime compensation:
>
> 1. Compute the regular rate by dividing the total earnings for the week, including earnings during overtime hours, by the total hours worked during the week, including the overtime hours. For each overtime hour worked, the employee is entitled to an additional <u>one-half the regular rate</u> for hours requiring time and one-half and to an additional full rate for hours requiring double time. This is the most commonly used method of calculation.[11]

The FLSA regulations also expressly address the issue of how to calculate overtime on production bonuses and other variable pay.  At 29 C.F.R. § 778.209(a) the regulation explains that where an employee worked overtime during a period used to calculate the bonus, his overtime pay for each hour of overtime worked is

---

[10]    To the extent Plaintiffs' citation to the 2011 changes to the FLSA regulations address any material issues here (which they do not), this case does not address fluctuating workweek payments in 2011 but rather the remedies for alleged misclassification for work performed between 2002-2004.  As such, the recent FLSA regulations Plaintiffs cite should not impact this motion at all.

[11]    DLSE Enforcement Manual, Section 49.2.1.1, p. 49-4, http://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf (emphasis added).

calculated as "<u>one-half</u> of the hourly rate of pay allocable to the bonus for that week."  (emphasis added).

In short, to the extent Plaintiffs are attempting to argue that their "bonus" payments were only intended to compensate class members for 40 hours of work per week such that they are owed time-and-one-half overtime on such bonuses, their argument not only is factually baseless, but also is contrary to established law.

### 2.   The Overwhelming Weight of Authority Holds That Back Overtime Pay Owed on Salary in a FLSA Misclassification Case is Also Calculated Using the Half-Time Method

Plaintiffs further argue that, for the salary portion of their pay, the half-time method of calculating overtime is allowed only when the elements of  29 C.F.R. § 778.114 (the "fluctuating workweek regulation") are satisfied.  Moreover, they employ a narrow interpretation of this regulation that can <u>never</u> be satisfied in an exemption misclassification case.  As such, Plaintiffs argue for a blanket rule against using the half-time method to calculate back overtime in an exempt misclassification case even if the employee understood his salary was to cover all hours worked.  Notably, Plaintiffs fail to cite any DOL administrative interpretation or appellate-level case to support their position because none exists.

#### a.   Plaintiffs' Position Is Squarely Contrary to the DOL's Own Interpretation

First, the DOL's position on this point is clear and is entitled to deference:  An agency's interpretation of its own ambiguous legislative regulation  is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997).  This interpretation may come in a variety of forms, including opinion letters, internal advisory memoranda, and amicus briefs, none of which themselves require notice and comment or formal adjudication procedures, as long as the interpretation reflects "the agency's fair and considered judgment on the matter in question," and is not "a post hoc rationalization advanced by an agency

8

1  seeking to defend past agency action against attack[.]" *Auer*, 519 U.S. at 462); *see*

2  *also Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007) (agency's

3  interpretation of its own regulations is "controlling" unless "plainly erroneous or

4  inconsistent with the regulations being interpreted.").

5       This "*Auer* deference" applies to an opinion letter from the DOL that is

6  directly on point, Opinion Letter FLSA 2009-3, issued January 14, 2009.[12]  In this

7  letter, the DOL addressed a situation where the employer realized that employees it

8  had treated as exempt in the past had been misclassified, and the employer sought to

9  calculate back pay for these misclassified employees.  The DOL explained that the

10 proper method of calculation is the half-time method described in the fluctuating

11 workweek regulation.  Under this method, an employee is presumed to have been

12 paid straight time for all hours actually worked, and is entitled only to a half-time

13 premium on a regular rate for each overtime hour, with the regular rate being

14 calculated by dividing total weekly salary by the total hours worked in the week.

15      The fluctuating workweek regulation requires there to be a "clear mutual

16 understanding of the parties that the fixed salary is compensation for however many

17 hours the employee may work in a particular week, rather than for a fixed number of

18 hours per week."  The DOL explained that it has been the DOL's enforcement

19 position since 1973 that this requirement is satisfied where the employee "continues

20 to work and accept payment of a salary for all hours of work."  *Id.* at p. 2 (citing

21 opinion letter FLSA-772 (Feb. 26, 1973)).  Indeed, the DOL form that Full

22 Spectrum used to calculate back pay for Account Executives outside California was

23 the DOL's WH-134 Form which included a "DOL Coefficient" that could be used to

24

25 ───────────────

   [12]     Notably, the Obama administration rescinded a number of the January
26 opinion letters that were issued in the waning days of the Bush administration (e.g.,
   FLSA 2009-25 or FLSA 2009-33), but opted <u>not</u> to withdraw this letter, indicating
27 that it truly reflects a point of settled law.  Kaufman Dec. ¶ 6, Ex. "H" (Rescinded
   Opinion Letters)

28

─────────────────
9

calculate back overtime to a misclassified employee.[13]  Tellingly, using the DOL Coefficient generates the same numbers as the half-time calculation method.

The DOL ultimately concluded in FLSA 2009-3 that to use the half-time method described in the fluctuating workweek regulation, the employer and employee only need to "have a 'clear and mutual understanding that they would be paid on a salary basis for all hours worked."  *Id.* at p. 2.  As explained above, the evidence is undisputed that such an understanding existed here.  Thus, this Court should defer to the DOL's rational interpretation of the FLSA regulations.

**b.      Circuit Courts Have All Adopted the Same Interpretation as the Department of Labor**

While there have been five separate circuit courts to have addressed calculation of back overtime to an employee erroneously classified as exempt, the most recent of the decisions, *Desmond v. PNGI Charlestown Gaming*, 630 F.3d 351 (4th Cir. 2011), contains a thorough analysis that includes a discussion of the other four circuit court decisions.[14]  In *Desmond*, the plaintiffs were former racing officials who the defendant had classified as exempt under the FLSA's administrative exemption.  The plaintiffs contended that they did not qualify for the exemption as a matter of law, and the district court agreed, granting them summary judgment on liability.

The district court calculated damages by assuming that the employees' salary had paid them their straight time pay for all hours worked, and that the employees were only owed a half time premium for their overtime hours.[15]  The district court

---

[13]      Kaufman Dec. ¶ 5, Ex. "G" (DOL Form WH-134 Full Spectrum used).

[14]      Those other circuit decisions are      *Urnikis Negro v. Am. Family Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010), *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008), *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35 (1st Cir. 1999), and *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988).

[15]      The parties stipulated to the number of overtime hours worked, so the only question was how to calculate the money owed for those stipulated overtime hours.

did not rely upon the fluctuating workweek regulation at all, but instead just relied on the general principle that the employees were already paid straight time for all hours worked because their salary was intended to cover all the hours they worked. The plaintiffs appealed, arguing instead that their salary should have been deemed to have compensated them only for 40 hours of work, such that they were owed both straight time and a half-time premium for all overtime hours.

The Fourth Circuit rejected the plaintiffs' argument, and affirmed the district court. The Fourth Circuit began by noting that the United States Supreme Court in *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572 (1942) had generally held that where an employee agreed to receive a fixed amount for all hours worked in a week, the regular rate for the employee is calculated by "divid[ing] the employees fixed weekly salary by the total hours worked in the particular workweek." This conclusion is premised on an assumption that the salary is straight-time compensation for all hours worked by the employee. *Desmond*, 603 F.3d at 354. The court then surveyed decisions from the Fifth, First, Seventh and Tenth Circuits, as well as the aforementioned 2009 DOL opinion letter, and noted that they all supported the view that misclassified employees are entitled to be paid only a half-time premium on the regular rate for overtime hours worked:

> "[These authorities] all have determined that a 50% overtime premium was appropriate in calculating unpaid overtime compensation under 29 U.S.C. § 216(b) in mistaken exemption classification cases, so long as the employer and employee had a mutual understanding that the fixed weekly salary was compensation for all hours worked each workweek and the salary provided compensation at a rate not less than the minimum wage for every hour worked."

*Id.* at 354-355; *see also* 29 C.F.R. § 778.113 (regular rate is calculated "by dividing the salary by the number of hours which the salary is intended to compensate.")

11

While some of these circuit courts reached this conclusion by relying directly on the fluctuating workweek regulation, others, such as the Seventh Circuit, simply concluded that the exempt employees had <u>agreed</u> that the compensation they received was intended to cover all the hours they worked in a week.  This necessarily meant that the employees were entitled only to the unpaid half-time portion for overtime hours and that the regular rate was calculated by dividing total compensation by their total hours worked.  *See Desmond*, 603 F.3d at 355-56.  In short, whether or not the fluctuating workweek regulation applies, where the evidence shows that the parties agreed that the employee's compensation would cover whatever hours the employee worked, employers use the half-time method to calculate the unpaid portion of the employee's overtime pay.

Consistent with the analysis of these courts, the *Desmond* court noted that the record before it reflected that "the former employee [plaintiffs] agreed to receive straight time pay for all hours worked in a given workweek and already received such pay."  Accordingly, their only "loss suffered" was "the 50% premium for their overtime hours." *Id.* at 357.  From those facts, it necessarily flowed that unpaid overtime should be calculated using the half-time method.

The facts in the instant action are not distinguishable from this line of decisions in any meaningful sense.  Here, the Branch Account Executives were informed that they would be treated as exempt employees and would receive a base salary plus incentive pay based on monthly origination volume, with no additional pay tied specifically to hours worked.  Wallace admitted he understood himself to be exempt and that "there [was] no time limitations as to the performance of his job duties."  Other Branch Account Executives who were deposed admitted the same.

By contrast, there is not a shred of admissible evidence that Branch Account Executives were informed that their work would be limited to 40 hours per week, or to any specific number of hours.  Indeed, Plaintiffs' central theory in the case is that

1   class members were forced to work long hours but were told that they would not

2   receive any extra compensation for it (other than additional incentive pay if the long

3   hours resulted in more originations).  Because the employees were treated as

4   exempt, if Full Spectrum misclassified them, the unpaid overtime they are owed is

5   the half-time portion, as they already received all their straight-time pay.

6           **3.      The Outlier District Court Cases Plaintiffs Cite Fail to
                      Account for the DOL's Interpretation of Its FLSA**

7           **Regulations or the Unanimous Opinion of Circuit Courts**

8           To the extent Plaintiffs cite authority that is somewhat on point, they rely

9   primarily on an outlier district court case, *Russell v. Wells Fargo Bank, N.A.*, 672 F.

10  Supp. 2d 1008 (N.D. Cal. 2009), that disregards both the DOL's position and the

11  appellate authority that existed at the time.  Furthermore, the decision was decided

12  before the 4th and 7th Circuits issued the contrary *Desmond* and *Urnikis-Negro*

13  decisions, so the district court lacked the benefit of those interpretations to guide it

14  to a correct conclusion.  Thus, despite Plaintiffs' protestations otherwise, this Court

15  should not follow *Russell.*

16          In *Russell*, Judge Claudia Wilken set forth a blanket rule that, in an FLSA

17  misclassification case, damages are always calculated by assuming that the

18  employee was compensated only for 40 hours, such that the employee is entitled to

19  time and one-half compensation with the regular rate calculated by dividing total

20  hours worked by 40 hours.  *Id.* at 1012, 1013-14.  Judge Wilken drew this

21  conclusion from a misreading of the governing regulations that completely ignores

22  the interpretation the DOL has long taken.  Indeed, Judge Wilken simply dismissed

23  the DOL's construction of its own regulations without noting the deference the

24  DOL, as the agency who promulgates regulations under the FLSA, is entitled in its

25  opinion letters pursuant to *Auer* and *Long Island Care.*

26          Judge Wilken also engaged in mistaken reasoning where she equated an

27  employer and employee agreeing that the salary paid would cover straight-time pay

28

13

for all hours worked with an unlawful agreement that the employee would waive the right to overtime pay.  This, however, is comparing apples and oranges.  If an employee who has agreed that his salary covers straight time for all hours worked can establish that the employer also owed the employee premium overtime pay because the employee was not actually exempt, then the employee may recover premium overtime pay.  The question is merely <u>how</u> that overtime pay is calculated, not whether the employee has waived the right to overtime pay altogether.

Judge Wilken's reasoning was also expressly <u>rejected</u> by the Seventh Circuit in *Urnikis-Negro* where the Seventh Circuit recognized that, even if the fluctuating workweek regulation itself does not apply in an exemption misclassification case, the question remains whether the salary paid to the employee was intended to cover all the hours they worked.  After all, the fluctuating workweek regulation is not even directed at employees treated as exempt, but rather at the special case of <u>salaried non-exempt</u> employees.  The Seventh Circuit recognized that, under *Overnight Motor,* it is for the employer and employee to agree how many hours the salary is intended to cover, so long as the employee ultimately receives greater than minimum wage for all hours worked.  Where the employee has agreed that his salary pays straight time for all hours worked, then the unpaid overtime <u>necessarily</u> is limited to the half-time premium portion of the overtime pay.  *See Urnikis-Negro*, 616 F.3d at 680-84; *see also Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896, 918-919 (D. Minn. 2011) (criticizing *Russell* decision and instead following *Urnikis-Negro* reasoning); *see, e.g., Torres v. Bacardi Global Brands Promotions, Inc.*, 482 F. Supp. 2d 1379 (S.D. Fla. 2007) ("Bacardi does not rely on the FWW method as its basis for contending that Mr. Torres' back pay, if any, should be computed by half-time.  Rather, Bacardi argues that because Mr. Torres has already received his regular rate for all hours worked, he is entitled to half-time for those hours worked in excess of forty per week.").

14

Judge Wilken also erroneously relied in part, upon a district court decision from the District of Columbia, *Rainey v. American Forest & Paper Association*, 26 F. Supp. 2d 82, 99-102 (D.D.C. 1998) that has been rejected <u>repeatedly</u> by other courts as unpersuasive.[16]  *See Tumulty v. FedEx Ground Package System, Inc.,* 2005 U.S. Dist. LEXIS 25997 (W.D. Wash. Aug. 16, 2005) (declining to follow *Rainey* because court did not find its "reasoning persuasive"); *Boyle v. Barber & Sons, Co.,* 2005 U.S. Dist. LEXIS 47314, * 10 (W.D. Mo. Mar 4, 2005) (finding *Rainey* contrary to "great weight of persuasive authority."); *Saizan v. Delta Concrete Products Co., Inc.*, 209 F. Supp. 2d 639 (M.D. La. 2002) (rejecting *Rainey* as inconsistent with better-reasoned 5th Circuit authority).

In sum, Judge Wilken adopted a poorly reasoned outlier position that is not binding on this Court, is unpersuasive, and has not been adopted by a single circuit court in the United States.  Accordingly, Defendants respectfully request that the Court not follow Judge Wilken's erroneous lead, but instead follow the well-reasoned decisions of the DOL and five different circuit courts.

**B.**     **Plaintiffs' Motion for Partial Summary Judgment on Their Entitlement to Prejudgment Interest Should Also be Denied**

**1.**     **Prejudgment Interest Is Not "Restitution" at All, and thus Not Recoverable Under the UCL**

---

[16]     The other cases cited by Plaintiffs for the proposition that the half-time method is inapplicable to misclassification cases do not compel a different outcome here.  *Monahan v. Emerald Performance Materials, LLC*, 705 F. Supp. 2d 1206 (W.D. Wash. Feb. 25, 2010) (a district court decision that did not address questions about the application of the half-time method in misclassification cases); *Brown v. Nipper Auto Parts and Supplies, Inc.*, 2009 WL 1437836 (W.D. Va. May 21, 2009) (unpublished case which relies on the flawed reasoning in *Rainey*); *In re Texas EZ Pawn Fair Labor Standards Act Litigation*, 633 F. Supp. 2d 395 (W.D. Tex. 2008) (invalid decision which refused to follow the decision of the Fifth Circuit in *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988)); *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 60 (D.C. 2006) (finding half-time inapplicable for reasons that are not evidenced in the present case: Sprint policy docked employees for working less than 40 hours a week and employees worked regular hours); *Scott v. OTS Inc.*, 2006 WL 870369 (N.D. Ga. Mar. 31, 2006) (district court opinion from foreign jurisdiction that assumed if fluctuating workweek regulation did not apply employee must have agreed to work only 40 hours per week).

15

1    In their motion, Plaintiffs cannot dispute that monetary recover under the

2 UCL is limited to restitution.  The California Supreme Court has made this point

3 repeatedly.  *See Cortez v. v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163,

4 173 (2000) ("consequential damages are outside the restitutionary scope of section

5 17203," because the UCL "is not an 'all-purpose substitute for a tort or contract

6 action.'"); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144-45,

7 1150 (2003) (recovery limited to return of money obtained through unfair practice,

8 not broader compensatory remedy of disgorgement); *see also Jaffe v. Crawford Ins.*

9 *Co.*, 168 Cal. App. 3d 930, 935 (1985) (a "defendant is asked to return something he

10 wrongfully received; he is not asked to compensate the plaintiff for injury suffered

11 as a result of his conduct"); *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal.

12 App. 3d 758, 774  (1989) ("the better rule denies compensatory damages as distinct

13 from the equitable remedy of restitution.").

14    Plaintiffs contend that they are nonetheless entitled to recover prejudgment

15 interest, but they fail to cite authority holding that interest is a form of restitution.

16 They cannot because it is not.  Indeed, notwithstanding that a prevailing plaintiff is

17 entitled to liquidated damages under the FLSA as a substitute for interest,[17] multiple

18 courts have held that these liquidated damages cannot be recovered in a UCL action

19 that is derivative of the FLSA because such a recovery is <u>not</u> restitutionary.  *See*,

20 *e.g.*, *Harris v. Investor's Business Daily, Inc.*, 138 Cal. App. 4th 28, 34 (2006)

21 (FLSA "liquidated damages" are not recoverable as restitution pursuant to the

22 UCL); *Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 898, 900 (C.D. Cal.

23 2005) (the concern that employers would face "financial ruin" by paying "windfall

24 payments, including liquidated damages" is not present in an UCL action, because

25 such payments are not recoverable); *Bahramipour v. Citigroup Global Markets,*

26 *Inc.*, 2006 WL 449132 (N.D. Cal. February 22, 2006) (legislative concerns about

27 _____

   [17]    *Uphoff v. Elegant Bath, Ltd.* 167 F.3d 399, 406 (7th Cir. 1999).

28

1  "liquidated damages" are obviated in a UCL suit because such suits are limited to

2  recovery of restitution only).[18]  Just as the UCL does not allow the recovery of

3  liquidated damages, it also does allow the recovery of prejudgment interest.

4         Plaintiffs also contend they are entitled to pre-judgment interest pursuant to

5  Labor Code Section 218.6, which provides for recovery of prejudgment interest for

6  successful claims for "nonpayment of wages."  Plaintiffs' reliance on this section is

7  misplaced, as the law does not recognize a UCL restitution claim as one for

8  "nonpayment of wages" under the Labor Code.  California courts have recognized

9  this distinction when evaluating other Labor Code provisions that employ the same

10  language.

11         For example, the California Supreme Court recognized the distinction

12  between these two concepts in *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389

13  (2010) where the Court analyzed the proper statute of limitations for a claim for

14  penalties arising when an employee did not receive his final paycheck in a timely

15  manner as required under Labor Code Sections 201 and 202.  Labor Code Section

16  203, the "waiting time penalties" provision, contains its own statute of limitations,

17  which is the same as on an action "for wages": "Suit may be filed for these penalties

18  at any time before the expiration of the statute of limitation on an action for the

19  wages from which the penalties arise."  Lab. Code § 203(b).  In *Pineda,* the Court

20  held that this language created a three-year statute of limitations.  *Id.* at 1398.  If an

21  action "for wages" included a UCL action for restitution of unpaid wages, then the

22  statute of limitations to recover penalties under Section 203 would necessarily be

23  four years, not three.

24         This point is further proved by looking to Labor Code Section 218.5, which

25  provides for attorney's fees in an action for "nonpayment of wages."  It is well

26  _____

27  [18]     Based on this authority, Judge Guilford granted Defendants Motion in Limine No. 9, which precludes Plaintiffs from seeking liquidated damages under the UCL.  See Docket No. 257, p. 5 (Order Following Pretrial Conference).

28

17

1   established that a UCL action to recover unpaid overtime does not carry the right to

2   recover attorney's fees under Section 218.5, but rather attorney's fees are recoverable

3   under the UCL, if at all, only if the prerequisites of a "public interest" action are met

4   under Code of Civil Procedure Section 1021.5.  *See Cortez v. Purolator Air*

5   *Filtration Products Co.*, 23 Cal. 4th 163, 175 (2000) (*citing Californians for*

6   *Population Stabilization v. Hewlett-Packard Co.,* 58 Cal. App. 4th 273 (1997));[19]

7   *People ex rel. City of Santa Monica v. Gabriel*, 186 Cal. App. 4th 882, 891 (2010)

8   ("Here, plaintiff sued only under the UCL. The UCL does not authorize an award of

9   attorney fees.").

10      In the final analysis, this Court can rely on the basic fact that restitution

11   entails returning to a person the property that was taken from the person.  Interest is

12   instead compensation intended to reimburse a person the value he could have

13   obtained had he had the property for his own use, much in the manner of lost profits

14   (which are not recoverable under the UCL either).  The UCL is limited to

15   "restor[ing] the status quo by returning to the plaintiff funds in which he or she has

16   an ownership interest."  *Pineda*, 50 Cal. 4th at 1401*; see also Michelson v. Hamada*,

17   29 Cal. App. 4th 1566, 1586 (1994) (finding that prejudgment interest "is awarded

18   to compensate a party for loss of use of his or her property and is in the nature of

19   damages.").  For all those reasons, prejudgment interest cannot be recovered through

20   the UCL.

21          **2.      Any Prejudgment Interest That Might Be Awarded Under
                      the UCL Would be 7% Simple Interest Per the California
22                    Constitution**

23

24

---

25   [19]      Although *Cortez* disapproved of aspects of the *Hewlett-Packard* decision, it never disapproved of the holding that a UCL action is distinct from an
26   action "for wages."  See *Gabriel,* 186 Cal. App. 4th at 891 (noting the continued validity of that aspect of the *Hewlett Packard* holding).  Plaintiff falsely contends
27   that *Cortez* held that prejudgment interest is recoverable under the UCL, but the case says nothing of the sort.

28

1    As mentioned above, neither Labor Code Section 218.6 nor any other
2  statutory basis exists for the award of prejudgment interest at 10% simple interest
3  for a claim under the UCL.  To the extent this Court somehow concludes that pre-
4  judgment interest is appropriate here despite the lack of any statutory basis for it, the
5  proper rate of interest would be set as the default provision within the California
6  Constitution, which provides at Article XV, Section 1 for <u>seven percent</u> annual
7  simple interest in the absence of a specific statutory provision to the contrary.  *See*
8  *Michelson*, 29 Cal. App. 4th at 1585 (1994) (using constitutional 7% interest rate on
9  damages in common law fraud action because of no specific statutory basis for
10  another rate).  Because Plaintiffs' motion seeks an order establishing an entitlement
11  to interest that differs from this constitutional amount, that provides a separate basis
12  to deny their motion.

13  **IV.**   **<u>CONCLUSION</u>**

14    For the foregoing reasons, Defendants respectfully request that Court deny
15  Plaintiffs' motion for partial summary judgment in its entirety.

16  DATED:  October 3, 2011    SHEPPARD MULLIN RICHTER & HAMPTON LLP
17

18
19    By    */s/ Thomas R. Kaufman*
20        THOMAS R. KAUFMAN
        Attorneys for Defendants
21
22
23
24
25
26
27
28