1  SHEPPARD MULLIN RICHTER & HAMPTON LLP
   Thomas R. Kaufman (SBN 177936)
2  tkaufman@sheppardmullin.com
   1901 Avenue of the Stars, Suite 1600
3  Los Angeles, CA 90067
   Telephone (310) 228-3700
4  Facsimile (310) 228-3701

5  Greg S. Labate, Esq. (SBN 144918)
   glabate@sheppardmullin.com
6  650 Town Center Drive
   Fourth Floor
7  Costa Mesa, CA 92626
   Telephone (714) 513-5100
8  Facsimile (714) 513-5130

9  SEYFARTH SHAW LLP
   Christopher A. Crosman (SBN 190336)
10 ccrosman@seyfarth.com
   2029 Century Park East, Suite 3500
11 Los Angeles, California 90067-3021
   Telephone: (310) 277-7200
12 Facsimile: (310) 201-5219

13 Attorneys for Defendants
   FULL SPECTRUM LENDING, INC.,
14 COUNTRYWIDE HOME LOANS, INC.,
   and COUNTRYWIDE FINANCIAL CORPORATION

15

16              UNITED STATES DISTRICT COURT

17     CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

18 REGGIE WALLACE, ERICK SOSA,      ) Case No. SACV 08-01463 JST (MLGx)
   on behalf of themselves and similarly )
19 situated employees,               ) **DEFENDANTS' OPPOSITION TO**
                                      ) **PLAINTIFFS' STATEMENT OF**
20              Plaintiffs,           ) **UNCONTROVERTED FACTS AND**
                                      ) **CONCLUSIONS OF LAW**
21       v.                           )
                                      ) Judge:   Hon. Josephine Staton Tucker
22 COUNTRYWIDE HOME LOANS,            ) Date:    October 24, 2011
   INC., COUNTRYWIDE FINANCIAL        ) Time:    10:00 a.m.
23 CORPORATION, FULL SPECTRUM         ) Ctrm..:  10A
   LENDING, INC, DOES 1-10,           )
24 INCLUSIVE,                         ) [Filed concurrently with Opposition to
                                      ) Plaintiff's MSJ; Declaration of Thomas
25              Defendants.           ) R. Kaufman and Separate Statement of
                                      ) Evidentiary Objections]
26 _____ )

27

28

W02-WEST:2TRK1\403999381.3

Defendants' Opposition to Plaintiffs' Statement of
Uncontroverted Facts and Conclusions of Law
Case No. SACV 08-01463 JST  (MLGx)

**ISSUE NO. 1: The amount of overtime wages for the base pay and/or bonus pay of any FLSA-Derivative restitution awarded under the unlawful prong of Plaintiffs' UCL claim (Claim 1, Cal. Bus. & Prof. Code §17200, et seq.), if any, is be calculated under the FLSA at the rate of 1 ½ times the class member's regular rate based on a 40-hour workweek.**

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1.      Plaintiffs' UCL claim has been certified as a national class claim Order Granting Plaintiff's Motion for Class Certification Pursuant to Rule 23 heard on May 11, 2009; Order Granting Plaintiffs' Motion for Class Notice heard on September 14, 2009 and corresponding Class Definition for Plaintiffs' UCL claim as set forth in the Court approved class notice.  Order of the Ninth Circuit Court of Appeals denying Defendants petition for permission to appeal district court's order granting class certification, dated August 19, 2009.  Order on Defendants' 2nd Motion for Partial Summary Judgment [Dkt #145]. Judicial Notice requested under FRE 201. * **Judicial notice** under *Federal Rules* | Objection. This is not a fact or evidence, but a legal conclusion. |

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| *of Evidence, Rule 201* is requested of the supporting evidence set forth in this document, which has been previously files in this case and is identified by docket number. | |
| 2.      Full Spectrum Lending ("FSL"), is a member of the Countrywide family specializing in the origination of sub-prime real estate loans.  FSL was a wholly owned subsidiary of Countrywide Credit Industries and later by Countrywide Financial Corporation. In late 2004, FSL became a division of Countrywide Home Loans, Inc.'s ("Countrywide").  Countrywide Financial Corporation is a holding company for Countrywide. Defendants' corporate headquarters and principal place of business is located at 4500 Park Granada Blvd., Calabasas, California. Declaration of Nancy Jagielski ("Jagielski Decl.") ¶1 [Defendants' Appendix of Evidence in Support of Their Motion for Partial Summary | Undisputed as to the accuracy of these facts as of the time the cited Jagielski declaration was signed. |

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Judgment (Dkt # 19)]; Plaintiff's Appendix, Vol. III, Ex. "23," FSL Account Executive Sales Presentation, Bates Label No. ("BL") 568-574; Plaintiffs' Appendix in Opposition to Defendants' 2nd Mtn for Partial Summary Judgment [Dkt #125-1], Tab "5" –Dec. Fiola, ¶¶ 42-43, Exs. AA-BB | |
| 3.      Wallace's offer of employment is a form offer that Countrywide uses for inbound Account Executives ("AEs") Boling Dec., ¶ 2 (c); Wallace Dec., ¶ 4 and Exhibit 1 thereto. | Disputed. The cited evidence does not demonstrate that this letter was sent to *all* Branch Account Executives, or that each Branch Account Executive nationwide was employed under the same compensation plan.  At most, the cited evidence demonstrates the letter was sent to Plaintiff Wallace, and the compensation plan he was subject to when he worked as an Inbound Account Executive. |
| 4.      The offer of employment is a representative sample of the offer of employment used by Countrywide. Boling Dec., ¶ 2 (d); Wallace Dec., ¶ 4 | Disputed. The cited evidence does not demonstrate that this letter was sent to *all* Branch Account Executives, or that |

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| and Exhibit 1 thereto. | each Branch Account Executive nationwide was employed under the same compensation plan.  At most, the cited evidence demonstrates the letter was sent to Plaintiff Wallace, and the compensation plan he was subject to. |
| 5.      The offer of employment letter stated all remuneration to AEs as follow:<br><br>"Monthly Compensation:<br>Month 1 & 2 = $2,500 per month plus bonus<br>Month 3 = $2,000 per month plus bonus<br>Month 4 & Subsequent Months = $ 800 per month plus bonus."<br>Boling Dec., ¶ 2 (e); Wallace Dec., ¶ 4 and Exhibit 1 thereto. | Undisputed that the offer letter sent to Wallace contains this language.  Disputed that the cited evidence demonstrates that this letter was sent to *all* Branch Account Executives, or that each Branch Account Executive nationwide was employed under the same compensation plan.  At most, the cited evidence demonstrates the letter was sent to Plaintiff Wallace, and the compensation plan he was subject to. |
| 6.      Non-discretionary bonuses are paid on a monthly basis or 30 days in arrears. There are also quarterly components.<br>Boling Dec., ¶ 2 (f), ¶ 3 and Exhibit 2 thereto; Wallace Dec., ¶ 4 and Exhibit | Undisputed that the sample incentive plans referenced provide for monthly payments of commissions to Full Spectrum Account Executives, or that certain components of compensation under these plans were paid on a |

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1 thereto. | quarterly basis.<br><br>Disputed that the fact that these terms appear in a few sample commission sales plan applicable to *some* employees, including certain plans in effect ***outside of the class period,*** is insufficient to establish this fact as to the class as a whole. |
| 7.      AEs might refer to bonus as commission, however, organizationally if Countrywide categorized it as a bonus plan and referred to it as a bonus plan, it's a bonus plan.<br>Boling Dec., ¶ 2 (g); Wallace Dec., ¶ 4 and Exhibit 1 thereto. | Objection.<br>This is not a fact or evidence, but a legal conclusion.<br>Whether or not the plan under which Full Spectrum Branch Account Executives were paid commissions legally constitutes a "commission plan" or a "bonus plan" is a legal determination for the Court to make. The names that certain parties used in referring to the plan is irrelevant to whether it constitutes a commission plan under the law.<br>To the extent this item does purport to contain any facts, they are Disputed. |

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | |
| 8.      Countrywide uses tiering for bonus calculation.<br><br>Boling Dec., ¶ 2 (g), ¶ 3 and Exhibit 2 thereto; Wallace Dec., ¶ 4 and 7 and Exhibit 1 thereto. | Objection.<br>This is not a fact, but rather argument and/or legal conclusion.  This "fact" is also vague and ambiguous as to the term "tiering."<br>The cited evidence does not contain any mention of "tiering" and therefore does not provide any support for this "fact."<br>To the extent this item does purport to contain any facts, they are Disputed. |
| 9.      E.G. Key Points to Incentive Plans.<br><br>It is a condition precedent for payment of the Monthly Rolling Deferred Incentive that the employee is still actively employed as a Full Spectrum Lending Account Executive at the time the Monthly Rolling Deferred Incentive payment is made. The employee may be eligible to receive amounts exceeding the monthly incentive opportunity on a deferred basis if <u>certain qualifications are met</u>. The employee must be <u>actively employed</u> on the date the Rolling Deferred Incentive amount is scheduled to be paid. In addition, <u>the employee must meet all eligibility requirements for incentive as stated in the Terms and Conditions</u> and any other applicable incentive plan documents.<br><br>The Monthly Rolling Deferred | Objection.<br>This item misquotes the cited document and adds material that is not present in the document.<br>This item is vague and ambiguous.<br>Defendants further object that the quoted language is not referred to in the Exhibit as "Key Points" and this is therefore not fact, but merely argument.<br>Defendants further object that the quoted Exhibit is irrelevant because **its effective date is outside the class** |

W02-WEST:2TRK1\403999381.3

-6-

Defendants' Opposition to Plaintiffs' Statement of
Uncontroverted Facts and Conclusions of Law
Case No. SACV 08-01463 JST (MLGx)

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Incentive is paid at the end of the 3rd month following the calendar month for which it is calculated. For example, the amount the employee's monthly incentive exceeds the monthly incentive opportunity for the month of January 2005 may be paid as Monthly Rolling Deferred Incentive at the end of April 2005, if the employee is eligible.

It is a condition precedent for payment of the Monthly Rolling Deferred Incentive that the employee is still actively employed as a Full Spectrum Lending Account Executive at the time the Monthly Rolling Deferred Incentive payment is made.

It is a condition precedent for payment of Quarterly Incentive that the employee is still actively employed as a Full Spectrum Lending Account Executive at the time the Quarterly Incentive payment is made.

Boling Dec., ¶ 3 and Exhibit 2 thereto;

Bates Label No. FSL3-024036 therein. | **period**.


Disputed.  While the cited page to the Exhibit, FSL3-024036, does contain *some* of the language quoted, additional sentences and underlining have been added to the "fact."

Furthermore, the fact that a portion of this language appears in one iteration of a commission sales plan applicable to *some* employees (those working as "CMD Dedicated Account Executives") during a period of time **outside of the class period** has no relevance to any issue presented by this litigation. |
| 10.     "Purposes of the Plan. * * * The incentives are designed to reward AEs for originating loans that fund if they remain with the company for the time periods specified herein, and for meeting or exceeding Countrywide's expectations in a number of performance areas that are within the responsibility and control of the AE. | Objection.

Defendants object that the quoted Exhibit is irrelevant because **its effective date is outside the class period**.


Disputed.  the fact that this language appears in one iteration of a commission sales plan applicable to |

W02-WEST:2TRK1\403999381.3

-7-

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| To accomplish these purposes, Countrywide will provide Monthly Incentives to AEs if they satisfy the terms and conditions precedent contained in the Plan and continue in Countrywide's employ for the periods described therein." Boling Dec., ¶ 3 and Exhibit 2 thereto; Bates Label No. FSL3-024037 therein. | *some* employees (those working as "CMD Dedicated Account Executives") during a period of time *outside of the class period* has no relevance to any issue presented by this litigation. |
| 11.    No mention of commissions is made in any of Countrywide's bonus plans, incentive plans or addendums thereto for AEs. Boling Dec., ¶ 3 and Exhibit 2 thereto. | Objection. This "fact" is actually argument and legal conclusion. Whether or not the commissions paid to Full Spectrum Branch Account Executives under the incentive compensation plans legally constitute a "commissions" is a legal determination for the Court to make. |
| 12.    At the time of hiring, Countrywide represented the AEs' employment status as: Regular Full-time, with all remuneration being paid for working 40 scheduled hours per week. Defendants' employee handbook for | Objection. Other than the quoted language from the Exhibit, this "fact" is merely argument. Objection, lack of foundation as to Plaintiffs' interpretation of the |

Defendants' Opposition to Plaintiffs' Statement of
Uncontroverted Facts and Conclusions of Law
Case No. SACV 08-01463 JST (MLGx)

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 2002 states, in pertinent part, "**REGULAR FULL-TIME**: This category refers to employees who are regularly scheduled to work forty hours per week." Boling Dec., ¶ 2 (c) and (d), ¶ 5, Exhibits 3 and 4 thereto; Wallace Dec., ¶¶ 4 and 5 and Exhibit 1 thereto. | handbook.  Mr. Boling, their counsel, fails to lay an adequate foundation as to what this handbook was, to whom it applied, or what its terms mean. Undisputed that the quoted language appears in one iteration of the Countrywide Employee Handbook, printed in May 2002. Disputed that Countrywide represented to all Account Executives that their compensation was meant to pay them for only 40 hours a week. Indeed, as set forth in Defendants' opposition papers, the class representatives testified that they understood that they were expected to work more than 40 hours per week without any additional eligibility for hourly pay.  *See*, *e.g.*, R. Wallace Depo., 101:7-22 and T. Lui Depo. 69:12-70:19. |
| 13.    During their employment as a branch account executive with FSL/Countrywide at anytime between | Undisputed that Full Spectrum Branch Account Executives were classified as exempt prior to January 1, 2005, and |

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 2002 and 2004, AEs worked more than 40 hours each week but did not receive any overtime compensation at the time of receiving their regularly scheduled paycheck.<br><br>Dec. Wallace, ¶ 6; Boling Dec., ¶ 2 (c) and (d), Exhibit 3 thereto; See Collective Declarations of FSL Account Executives – Plaintiffs' Appendix, Vol. IV-VII, ¶ 2 [Dkt # 26]. | therefore were not paid premium pay for any overtime hours they worked. As to the allegation of the actual hours worked by class members, objection that Plaintiffs fail to lay a competent foundation as to the hours worked by the other 4000+ putative class members.  Defendant disputes that all class members worked overtime, let alone worked overtime each week. |
| 14.     The total number of hours worked by AEs varied each week.  Hundreds of FSL AEs have declared that they worked more than 5 hours of overtime per week during their years of employment at Countrywide/ FSL.<br><br>Dec. Wallace, ¶ 6; See Collective Declarations of FSL Account Executives – Plaintiffs' Appendix, Vol. IV-VII, ¶ 2 [Dkt # 26]. | Undisputed that the self-serving, cookie-cutter declarations contain this statement.  Disputed that these declarations are truthful and accurate. **Some of these declarations also contain assertions that the declarant worked more than 24 hours in a single day.  These impossible levels of overtime are duplicated in the report of Plaintiffs' Expert, Dean Barron [#43, R. Kesterson, 55 hr/day; #72, R. Taylor, 45 hr/day; #79, M. Cianciola, 45 hr/day; #106, C. Deleon, 50 hr/day; #127, R. Moore, 56 hr/day; #154, I. Cupido, 40** |

W02-WEST:2TRK1\403999381.3

| | PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | **hr/day; #162, L. Morgan, 40 hr/day; #204, J. Glover, 50 hr/day; #205, B. Ly, 50 hr/day; #264, S. Benson, 55 hr/day; #268, S. Ellingson, 48 hr/day; #281, E. Conway, 60 hr/day; #292, D. Bell, 55 hr/day; #293, S. Declercq, 50 hr/day; #295, D. Satchell, 50 hr/day; #302, D. Wardrup, 60-80 hr/day; #310, K. Sturm, 45 hr/day; #313, B. Smith, 80 hr/day.]  Clearly, these declarations, along with the report based on the hours reported therein, are permeated with inaccuracy and cannot constitute competent evidence.** |
| 18 | 15.     As a result of Countrywide/FSL classifying their Account Executives in 1998 through December 31, 2004 as "exempt" employees they did not pay overtime compensation and have no payroll records or time cards to evidence the actual hours worked by FSL Branch Account Executives. Dep. Jagielski, 51:12-52:20, 205:1-9 [Dkt # 125-3]; Dep. Shead, 302:3- | Undisputed that Full Spectrum Lending Branch Account Executives were classified as "exempt" from overtime pay requirements prior to being reclassified as of January 1, 2005. Undisputed that Full Spectrum Lending has no contemporaneous records of the overtime hours worked by Branch Account Executives during the time they were classified as "exempt" from |

W02-WEST:2TRK1\403999381.3

-11-

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 304:2 [Dkt # 125-5]; Ex. "8", pages 3-4 [Dkt # 126-1, pp. 58-59 of 146]. | overtime pay requirements. |
| 16.    Defendants admit in the Acknowledgment Letters that the full amount of back overtime was conditionally due to the Account Executive under the Back Pay Program from Countrywide/FSL when it pre-printed in the acknowledgment for: "I am satisfied that the hours and the total amount noted above equals or exceeds **the full amount due to me for overtime hours worked** during the period indicated." The employee was required to execute the *acknowledgment* that the money paid to him/her **was due** for past overtime compensation before receiving any payment.<br><br>Dep. Shead, 4/16/08, 289:10-291:21 [Dkt # 125-5]; *acknowledgement* portion of the Acknowledgement Letter [Dkt # 126-1, p. 16 of 146]; Dep. Reggie Wallace, 87:18-88:4 [Dkt # 125-3]; Exs. "2" and "3" [Dkt # 126-1, | Undisputedly false.<br><br>**The Court has already adjudicated this issue in Defendants' favor. [Docket #100, 11/23/2009 Order Denying Plaintiffs' Motion for partial Summary Judgment, pp. 9-10].**<br><br>Objection.  This "fact" is not really a fact at all, but rather constitutes argument and legal conclusion. Defendants are not required to dispute such arguments and legal conclusions contained in this Statement. Furthermore, the fact that *class members* acknowledged that they had been paid for all overtime hours cannot possibly constitute an admission by *Defendants*.  None of the evidence cited by Plaintiffs in any way supports the conclusion that such an admission was made. |

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| pp. 10-16 of 146]. | |
| 17.    Countrywide/FSL relied exclusively upon select Branch Managers' **estimation** without any written proof in order to calculate the estimated 5 hours overtime for each of its 4300+ FSL Branch Account Executives.<br><br>Dep. Jagielski, 126:6-129:15, 405:7-408:25 [Dkt # 125-3]; Dep. Clease, 91:13-92:10,93:15-94:11, 94:22-97:6 [Dkt # 125-5]; Ex. "7 [Dkt # 126-1, p. 54 of 146]; Dep. Strelitz, 260:14-265:12; [Dkt # 125-6] Exs. "4" (Bates No. FS2 01336) [Dkt # 126-1, p. 26 of 146] and "5" (Bates No. FS2 01347) [Dkt # 126-1, p. 38 of 146]. | Disputed.<br><br>Objection. Argumentative.<br><br>Defendants' policy, in connection with the appeals process that was a part of the voluntary back pay program, was to contact managers whenever possible, but co-workers were also contacted for input on some appeals.  Defendants believed that the managers would have the most comprehensive, unbiased and reliable information concerning the overtime hours worked by the Branch Account Executives they supervised. Defendants believed that the Branch Account Executives themselves would not be as unbiased or reliable, because they faced a conflict of interest and might be inclined to inflate their own hours worked, or the hours of coworkers, who could then return the favor by inflating the hours of other employees.<br><br>**[Docket #25]:**<br><br>Strelitz Dep. 129:20-132:7.  Dep. |

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Jagielski, 126:6-129:15, 405:7-408:25; Plaintiffs' Appendix, Vol. I, Tab "5", Decl. Fiola, ¶ 30, Plaintiffs' Appendix, Vol. I, Tab "5", Decl. Fiola, ¶ 30, Ex. "P" – Dep. Clease, 91:13-92:10, 93:15-94:11, 94:22-97:6; Ex. "7". |
| 18.     Countrywide/FSL have admitted that the 13 Branch Manager surveys conducted by Lynda Phenix and Neha Mithani showed *great variances in the overtime hours worked by FSL Branch Account Executives*. Dep. Jagielski, 211:15-23 [Dkt # 125-3]; Exs. "26" –"30" [Dkt # 126-4, pp. 20 -54 of 120]. | Disputed that there were only 13 Branch Manager interviews, as Exhibits 27 and 29 show 14 or 15 interviews were conducted.  Admitted that overtime hours worked varies substantially between class members. **Defendants' 10/26/09 Appendix [Docket #69]:** Crosman Decl. ¶ 10, Ex. "K", Phenix Dep. Exh. 27 and 29; Crosman Decl. ¶ 11, Ex. "L" [Calculations based on Exhibits 27 and 29, interview notes and chart summary of notes] |
| 19.     Instead of sending a letter out to each Account Executive asking them how many overtime hours they worked each week, Countrywide/FSL contacted 13 of 47 Branch Managers, | Disputed. Defendants did provide the Branch Account Executives with a method for communicating their overtime hours worked to Full Spectrum, if they |

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| then intentionally reduced the average overtime hours worked a week, and then sent the Acknowledgement Letters to each Branch Manager to be given to each Account Executive in a face-to-face meeting. Dep. Phenix, 31:12-22, 34:19-60:24 [Dkt # 125-4]; Exs. "26"-"29" [Dkt # 126-4, pp. 20 - 29 of 120];  Dec. Fiola, ¶ 7(a)-(i) [Dkt # 125-1]; Dep. Shead, 269:21-270:12 [Dkt # 125-5]; Dep. Strelitz, 128:2-130:18 [Dkt # 125-5]. | believed they worked more than 5 hours per week.  The Acknowledgement Letters themselves expressly state, "If you have any questions or need additional information, please email the HR Service Center or you can create a case by selecting Contact HR on HR Central."  Further, the Acknowledgement Letters also state, in the "Acknowledgement" section, "I was given the opportunity to ask questions and offer my own records or information with respect to hours worked." In connection with the appeals process that was a part of the voluntary back pay program, Defendants communicated with Branch Account Executives individually regarding how many overtime hours they claimed to have worked. Furthermore, Full Spectrum did not "reduce the average overtime hours worked a week," but actually offered |

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | *exactly* the amount of overtime that their good faith investigation revealed the Branch Account Executives had worked.<br><br>The interview notes clearly demonstrate that the average amount of overtime worked by Branch Account Executives was 4.99 hours per week.<br><br>**Defendants' 10/26/09 Appendix [Docket #69]:**<br><br>Ex. 1 - Jagielski Decl. ¶ 6 and Ex. "G".<br>Crosman Decl. ¶ 10, Ex. "K", Phenix Dep. Exh. 27 and 29**;**<br>Crosman Decl. ¶ 11, Ex. "L"<br>[Calculations based on Exhibits 27 and 29, interview notes and chart summary of notes.] |
| 20.    Countrywide/FSL's Back Pay Program did not include interest on unpaid overtime compensation due FSL AEs.<br>Dec. Fiola, ¶ 3 (j) [Dkt # 125-1, p. 86 of 142]; Dep. Jagielski, 83:5-85:21 [Dkt # 125-3, pp. 55-57 of 142]. | Disputed.<br>No overtime compensation was legally "due" to FSL Branch Account Executives.  Rather, FSL offered to *voluntarily* provide Branch Account Executives with back pay for estimated overtime hours, even though the company believed in good faith that |

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | these employees were properly classified as "exempt" employees. **Defendants' 10/26/09 Appendix [Docket #69]:** Ex. 1 - Jagielski Decl. ¶¶ 3-10. |

**ISSUE NO. 2: The California and/or non-California class members are entitled to prejudgment interest at the simple rate of 10 %, or in the alternative, at the IRS rate for overpayments to be included in any FLSA-Derivative restitution awarded under the unlawful prong of Plaintiffs' UCL claim (Claim 1, Cal. Bus. & Prof. Code §17200, et seq.)**

| PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 21.    Plaintiffs incorporate fully herein all undisputed material facts, *supra*. Plaintiffs incorporate fully herein the supporting evidence for all undisputed material facts, *supra*. | Defendants incorporate by reference, as though set forth in full herein, their Responses to Plaintiffs' Facts 1 through 20. |

DATED:  October 3, 2011    SHEPPARD MULLIN RICHTER & HAMPTON LLP

By     _____
                     */s/ Thomas R. Kaufman*
                    THOMAS R. KAUFMAN
                    Attorneys for Defendants